**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:21-cv-02398-RM-NYW

CYNTHIA MULLEN,

     Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ADAMS,
COLORADO;
RICHARD A. REIGENBORN, in his official capacity as the Sheriff of the County of
Adams; and
WELLPATH, LLC,

     Defendants.

---

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiff, Cynthia Mullen, by and through her attorneys of KONTNIK | COHEN,

LLC, hereby brings this *First Amended Complaint and Jury Demand* against Defendants,

Board of County Commissioners of the County of Adams County, Colorado (the

"Board"), Adams County Sherriff Richard A. Reigenborn ("Sheriff"), and WellPath, LLC

("WellPath"), collectively known herein as ("Defendants"), under Section 504 of the

Rehabilitation Act ("Section 504"), and states as follows:

## I.     INTRODUCTION

1.     On August 24, 2020, the Brighton Police Department wrongfully arrested

Ms. Mullen, a deaf and physically disabled sixty-four-year-old woman. Ms. Mullen, who

relies on American Sign Language ("ASL") to communicate, was denied an ASL

interpreter during the Brighton Police Department's investigation. As a result, the

Brighton Police mistakenly determined Ms. Mullen was the primary aggressor and she was wrongly arrested.

2.      After the arrest, Ms. Mullen was taken into custody and forced to spend the night in jail. While jailed, the Defendants refused to provide ASL interpreters for Ms. Mullen throughout the duration of her stay. The Board and the Sheriff also refused to provide an accessible bed for Ms. Mullen thereby forcing Ms. Mullen, who is an amputee, to spend the night in an old, rickety wheelchair. Ms. Mullen was unable to communicate while in jail for more than sixteen (16) hours, which included multiple visits with medical professionals. Defendants employees observed Ms. Mullen crying and were aware that she was suffering both physically and emotionally.

3.      Ms. Mullen spent the night in extreme emotional turmoil and physical discomfort because the Defendants refused to provide ASL interpreters and accommodate her physical disabilities.

## II.      **PARTIES**

4.      Ms. Mullen is currently and at all times relevant to this lawsuit a resident of the State of Colorado.

5.      Ms. Mullen is a qualified individual with a disability within the meaning of Section 504 because she is substantially limited in major life activities, including hearing.

6.      Ms. Mullen is a qualified individual with a disability within the meaning of Section 504 because she is substantially limited in major life activities, including her ability to walk, stand, lift, and bend.

7.      Defendant, Board of County Commissioners of the County of Adams, Colorado, is located at 4430 South Adams Country Parkway, Brighton, Colorado 80601.

8.      Defendant, Board of County Commissioners of the County of Adams, Colorado, owns, operates, and controls the Adams County Sherriff's Office headquartered at 4430 South Adams County Parkway, Brighton, Colorado 80601.

9.      Defendant, Board of County Commissioners of the County of Adams, Colorado, owns, operates, and controls the Adams County Detention Facility located at 150 North 19th Avenue, Brighton, Colorado 80601 (the "Detention Facility").

10.     Defendant, Board of County Commissioners of the County of Adams, Colorado, is a recipient of federal financial assistance within the meaning of Section 504.

11.     Defendant, Board of County Commissioners for the County of Adams, Colorado, is required to provide reasonable accommodations to individuals with disabilities.

12.     Defendant, Richard A. Reigenborn, in his capacity as the Adams County Sheriff, owns, operates, and controls the Detention Facility.

13.     Defendant, Richard A. Reigenborn, in his capacity as the Adams County Sheriff, is a recipient of federal financial assistance within the meaning of Section 504.

14.     Defendant, Richard A. Reigenborn, in his capacity as the Adams County Sheriff, is required to provide reasonable accommodations to individuals with disabilities.

15.     Defendant, WellPath, LLC, is registered in Colorado as a Foreign Limited Liability Company with its principal office at 1283 Murfreesboro Pike, Suite 500, Nashville, Tennessee 37217.

16. Defendant, WellPath, LLC, contracts with the Detention Facility to provide healthcare services at the Detention Facility.

17. Defendant, WellPath, LLC, operates and controls the medical services that it provides at the Detention Facility.

18. Defendant, WellPath, LLC, is the recipient of federal financial assistance within the meaning of Section 504.

19. Defendant, WellPath, LLC, is required to provide reasonable accommodations to individuals with disabilities.

### III.   JURISDICTION AND VENUE

20. This action arises under the laws of the United States. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to these claims occurred in the District of Colorado.

### IV.   FACTUAL ALLEGATIONS

#### Ms. Mullen

22. Ms. Mullen is deaf.

23. Ms. Mullen's deafness substantially limits one or more of her major life activities, including, but not limited to, her ability to hear and to effectively communicate with hearing individuals.

24. Ms. Mullen's native language is ASL.

25. Ms. Mullen's preferred method of communication is ASL.

26. ASL is a different language than English.

27. Ms. Mullen cannot understand sentences that are written in English.

28. Ms. Mullen cannot write sentences in English.

29. Ms. Mullen cannot understand other people's verbal communication by reading lips.

30. Ms. Mullen cannot speak words.

31. To understand English that is conveyed to Ms. Mullen, she requires an ASL interpreter.

32. Ms. Mullen's right leg was amputated on July 13, 2016.

33. Ms. Mullen's big toe on her left foot was amputated on January 21, 2020.

34. Ms. Mullen requires a wheelchair for transportation.

35. Ms. Mullen has Type Two (2) Diabetes.

36. Ms. Mullen has Hyperlipidemia.

37. Ms. Mullen has Hypertension.

38. Ms. Mullen has Atherosclerotic Heart Disease of Native Coronary Artery without Angina Pectoris.

39. Ms. Mullen has Acute Kidney Failure.

40. Ms. Mullen has carpal tunnel syndrome in her left hand and right hand.

41. Ms. Mullen has neuropathy in her left hand and right hand.

42. Ms. Mullen's physical disabilities substantially limit one or more of her major life activities, including, but not limited to, her ability to walk, stand, lift, and bend.

DEFENDANT: THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ADAMS

43. The Board is a Colorado State department/agency.

44. The Board controls the budget for Defendant Richard A. Reigenborn, in his capacity for the Sheriff for Adams County.

45.     The Board's control of the budget for the Sheriff includes control of furnishings and appliances that are provided by the Sheriff at the Detention Facility.

46.     The Board's control of the budget for the Sheriff includes control over contracts for maintenance, repair, and other services for the Sheriff at the Detention Facility.

47.     The Board's control of the budget for the Sheriff specifically includes, but is not limited to, control of third-party contractors for the provision of healthcare services provided by the Sheriff at the Detention Facility.

48.     The Board's control for the budget includes the Detention Facility's contract with Defendant WellPath, LLC for the provision of healthcare services that are provided at the Detention Facility.

49.     The Board's control of the budget includes ensuring that there are funds available for the provision of reasonable accommodations by the Sheriff for individuals who are detained at the Detention Facility.

50.     The Board is a public entity that is the recipient of federal financial assistance, and it is required to provide reasonable accommodations for individuals with disabilities.

DEFENDANT: SHERIFF RICHARD A. REIGENBORN

51.     Richard A. Reigenborn is the Sheriff for the Adams County Sheriff's Office.

52.     The Adams County Sheriff's Office is a Colorado State department/agency.

53.     The Adams County Sheriff's Office is responsible for operating implementing policies for the Detention Facility.

54.     The Adams County Sheriff's Office furnishes and provides appliances for the Detention Facility.

55.     The Adams County Sheriff's Office enters into contracts for maintenance, repair, and other services for the Detention Facility.

56.     The Adams County Sheriff's Office enters into contracts with other parties for the provision of healthcare services at the Detention Facility.

57.     The Adams County Sheriff's Office entered into a contract with WellPath, LLC for the provision of healthcare services to be provided at the Detention Facility.

58.     The Adams County Sheriff's Office is responsible for ensuring that the Detention Facility provides reasonable accommodations to individuals with disabilities.

59.     The Adams County Sherriff's Office is a public entity that is the recipient of federal financial assistance, and it is required to provide reasonable accommodations to for individuals with disabilities.

### DEFENDANT: WELLPATH, LLC

60.     WellPath, LLC is a private healthcare services company.

61.     WellPath, LLC contracts with detention centers throughout the United States to provide healthcare services.

62.     WellPath, LLC contracted with the Board and the Sheriff to provide healthcare services for detainees at the Detention Facility.

63.     WellPath, LLC provided medical services to Plaintiff Mullen in this case.

64.     WellPath, LLC is a recipient of federal financial assistance.

65.     WellPath, LLC is responsible for ensuring that the services that it provides to detainees at the Detention Facility are equally accessible to individuals with disabilities.

### THE INCIDENT ON AUGUST 24, 2020

66.     On August 24, 2020, at approximately 4:30 p.m., Ms. Mullen was on her way to a doctor's appointment along with Deborah Johnson and Susan Weiler.

67.     Ms. Johnson is Ms. Mullen's friend and caretaker.

68.     Ms. Weiler is Ms. Mullen's friend.

69.     Ms. Johnson was driving the vehicle and Ms. Mullen was sitting in the front passenger seat.

70.     Ms. Weiler, who was sitting in the back of the vehicle, became upset and started yelling at Ms. Mullen in English.

71.     Ms. Mullen turned around in the front seat so she could see Ms. Weiler and attempted to communicate with Ms. Weiler in ASL.

72.     Ms. Weiler hit Ms. Mullen with her hand.

73.     Ms. Mullen signed to Ms. Weiler "don't ever hit me again."

74.     Ms. Weiler continued to yell at Ms. Mullen, and Ms. Mullen kept telling her to "stop it."

75.     In response, Ms. Weiler continued to hit Ms. Mullen with her hand.

76.     Ms. Mullen tried to stop Ms. Weiler from hitting her.

77.     Ms. Weiler grabbed Ms. Mullen's wrists and held them down.

78.     When Ms. Mullen was able to release her arms from Ms. Weiler's grip, her wrists were bleeding.

79.     Ms. Johnson pulled over into the Wells Fargo parking lot located at 15 S. Main Street, Brighton, Colorado 80601.

80.     Ms. Weiler called the police.

81.     The Brighton Police were dispatched to the scene.

<u>Ms. Mullen was Wrongfully Arrested</u>

82.     At approximately 4:46 p.m., the Brighton Police Officer Barfield ("Officer Barfield") arrived at the Wells Fargo parking lot.

83.     Upon arrival, Officer Barfield saw Ms. Mullen sitting in the car on the passenger side of a vehicle and Ms. Johnson was standing next to her.

84.     Officer Barfield observed dried and wet blood on Ms. Mullen's wrists.

85.     Officer Barfield called an ambulance to treat Ms. Mullen's injuries.

86.     Officer Barfield first spoke to Ms. Johnson, who told Officer Barfield that Ms. Mullen was deaf and needed an ASL interpreter.

87.     Officer Barfield then attempted to interview Ms. Mullen in spoken English.

88.     Officer Barfield noted in his report that "Ms. Mullen was able to say some words, but most [were] unintelligible."

89.     Officer Barfield knew that Ms. Mullen was deaf and needed an ASL interpreter to communicate.

90.     Rather than requesting or later providing an ASL interpreter, Officer Barfield asked Ms. Johnson to translate.

91.     Ms. Johnson, again, explained to Officer Barfield that she is not fluent in ASL and could not interpret for Ms. Mullen.

92.    Ms. Johnson explained to Officer Barfield that she is not an interpreter.

93.    Ms. Johnson was unable to effectively translate for Ms. Mullen.

94.    Officer Barfield noted in his report that Ms. Mullen "would not go into more detail or tell [him] anymore about what happened inside the car."

95.    Ms. Mullen wanted to go into more detail and tell Officer Barfield what had happened inside the car; however, Ms. Mullen was unable to tell Officer Barfield what had happened because the Brighton Police did not provide an ASL interpreter.

96.    Officer Barfield went to the other side of the vehicle and spoke directly to Ms. Weiler.

97.    Ms. Weiler is hearing and can speak.

98.    Ms. Weiler's native language is English.

99.    Ms. Weiler told Officer Barfield that Ms. Mullen hit her on the jaw.

100.    Ms. Weiler, unlike Ms. Mullen, did not require any medical attention when the paramedics arrived on scene.

101.    Based on Ms. Weiler's statement, Officer Barfield wrongfully concluded that Ms. Mullen was the primary aggressor.

102.    Officer Barfield arrested Ms. Mullen on scene.

<u>Ms. Mullen was Arrested, Booked, and Cleared for Incarceration Without an Interpreter</u>

103.    The Brighton Police transported Ms. Mullen to the police station for booking.

104.    At the police station, Ms. Mullen requested ASL interpreters, but her requests were ignored.

105.    Without an ASL interpreter, the staff at the police station took Ms. Mullen's picture, obtained her fingerprints, and filled out initial paperwork.

106.    Ms. Mullen did not understand the booking process or why she was being arrested.

107.    Ms. Mullen did not understand if she was being charged or the extent of the charges.

108.    Ms. Mullen was frustrated, anxious, and confused because she could not communicate with the officers at the police station.

109.    Ms. Mullen, who is a diabetic and amputee, was also worried because she was unable to communicate with anyone about her medical condition.

110.    Ms. Mullen was then transported to Platte Valley Medical Center (the "Medical Center") for treatment prior to her incarceration.

111.    Ms. Mullen could not communicate during transport to the Medical Center.

112.    Upon arrival at the Medical Center, and while waiting for the doctors to arrive, the officers provided Ms. Mullen a piece of paper to write a statement.

113.    Ms. Mullen immediately wrote, "[a]m deaf, I use sign language."

114.    Ms. Mullen was unable to effectively communicate through a written statement.

115.    The doctors at the Medical Center briefly treated Ms. Mullen at the Medical Center.

116.    No ASL interpreters were provided to Ms. Mullen when she was treated at the Medical Center.

117.    Ms. Mullen was cleared for incarceration.

### MS. MULLEN WAS TRANSFERRED TO AND HELD IN A HOLDING CELL AT THE DETENTION FACILITY WITHOUT AN INTERPRETER

118.    Ms. Mullen was then transported to the Detention Facility.

119.    Ms. Mullen did not know where she was going.

120.    Ms. Mullen still did not know why she was being arrested.

121.    Ms. Mullen was in physical pain, angry, and terrified.

122.    Once Ms. Mullen arrived at the Detention Facility, there were no ASL interpreters present.

123.    Ms. Mullen was required to wait in the back of a SUV for an extended period without any explanation.

124.    The Detention Facility's staff knew that Ms. Mullen was deaf when she arrived at the facility.

125.    The Detention Facility's staff knew that Ms. Mullen required an ASL interpreter when she arrived at the facility.

126.    The Detention Facility's staff knew that Ms. Mullen had a physical handicap and used a wheelchair when she arrived at the facility.

127.    The Detention Facility's staff knew that Ms. Mullen required ongoing medical treatment when Ms. Mullen arrived at the facility.

128.    The Detention Facility's staff knew that Ms. Mullen was in an extremely vulnerable state when she arrived at the facility.

129.    The Detention Facility's staff retrieved Ms. Mullen from the SUV and transferred her to a holding cell in an old rickety wheelchair.

130.    The wheelchair caused Ms. Mullen physical pain, but she was unable to describe the pain to the Detention Facility's staff because no ASL interpreters were provided.

131.    Ms. Mullen was forced to sit in the wheelchair and wait in a holding cell without an explanation.

132.    Ms. Mullen was unable to communicate her frustration, fear, or anger in addition to her physical pain.

133.    Rather than provide an interpreter, the Detention Facility's staff attempted to communicate with Ms. Mullen through a female officer, who knew how to sign individual letters (fingerspell) in ASL.

134.    The female officer attempted to communicate with Ms. Mullen by fingerspelling words, but it was tedious and ineffective.

135.    Ms. Mullen was frustrated because signing single letters at a time does not allow her to effectively communicate with the Detention Facility officers and staff.

136.    Ms. Mullen repeatedly told the female officer that she needed an ASL interpreter.

137.    The female officer became frustrated and gave up trying to communicate with Ms. Mullen.

138.    Ms. Mullen continued to try to tell the officers and staff that she was deaf and needed an ASL interpreter, but she was ignored.

139.    One of the officers then put on a movie about what to do when transferred to a jail cell (i.e., change clothes, participate in a pat down, etc.) and left Ms. Mullen alone.

140.    After the movie, Ms. Mullen was able to signal to an officer that they had a video phone sitting outside of the holding cell, which the officers had completely ignored.

141.    The officer allowed her to make one phone call using the video phone.

142.    Ms. Mullen tried to a call Ms. Johnson, but when no one answered, she was forced to leave a message.

143.    The Detention Facility's staff did not allow Ms. Mullen to make any more calls.

144.    The Detention Facility's staff did not allow Ms. Mullen to use the video phone to communicate with the officers or staff at the facility.

145.    At one point, while waiting in the holding cell, Ms. Mullen needed to use the restroom.

146.    Ms. Mullen was forced to wait several minutes before she was ablet to get the attention of the Detention Facility's staff so that she could use the restroom.

147.    One of the officers wheeled her to the handicapped restroom at the back of the facility.

148.    The handicapped restroom was not cleaned and had a foul smell.

149.    The officer signaled to Ms. Mullen to use the light when she was finished so they could take her back to the holding cell and left Ms. Mullen alone in the handicapped restroom.

150.    When Ms. Mullen was finished in the restroom, she flashed the light several times but was forced to wait for an extended period before an officer arrived to take her back to the holding cell.

151.     Once back in the holding cell, Ms. Mullen, who is an amputee, attempted to communicate to the Detention Facility's staff that she needed a specific bed due to her physical handicap.

152.     The Detention Facility's staff did not understand Ms. Mullen's request because it refused to provide ASL interpreters.

153.     After many efforts to communicate, the Detention Facility's staff eventually brought Ms. Mullen a cot.

154.     The cot was too low to the ground, and Ms. Mullen tried to explain that, with her prosthetic leg, it was impossible for her to transfer from her wheelchair to the cot.

155.     The Detention Facility's staff was unable to converse with Ms. Mullen and eventually gave up trying to communicate with her about the height of the cot.

156.     Ms. Mullen was forced to sit upright in the old rickety wheelchair overnight until approximately 4:00 a.m.

157.     Sitting in the old wheelchair caused Ms. Mullen physical pain, and caused her extreme frustration, anger, and feelings of helplessness.

158.     At approximately 4:00 a.m., an officer woke Ms. Mullen by kicking her wheelchair, which startled and scared her awake.

### MS. MULLEN WAS DENIED AN INTERPRETER DURING TWO MEDICAL VISITS AT THE DETENTION FACILITY

159.     After being startled awake, Ms. Mullen was taken to see a nurse who worked at the Detention Facility by the contract for healthcare services between the Board, the Sheriff, and WellPath.

160.     Ms. Mullen tried to tell the nurse that she was tired, exhausted, frightened, and in pain from her earlier injuries, her preexisting amputation, the wheelchair, as well as her neuropathy and general diabetic pain.

161.     The nurse attempted to ask Ms. Mullen medical questions, however, since the Defendants refused to provide an interpreter, Ms. Mullen was forced to try to communicate about her medical care using a dry erase board.

162.     Written English on a dry erase board is not an effective means of communication for Ms. Mullen.

163.     Without providing Ms. Mullen with effective communication, the nurse denied Ms. Mullen pain medication.

164.     Without providing Ms. Mullen with effective communication, the nurse also attempted to give Ms. Mullen a shot for her diabetes, but it was not the correct shot.

165.     Ms. Mullen could not communicate with the nurse to explain to her that the shot she was about to administer was not the correct shot.

166.     Ms. Mullen was so frightened and distraught about the medical treatment, or lack thereof, that she burst into tears.

167.     Ms. Mullen was eventually taken down several floors to a jail cell, where she was forced to wait and sleep in the old wheelchair for a second time.

168.     The Detention Facility's staff again kicked Ms. Mullen's wheelchair to wake her.

169.     Ms. Mullen was startled awake, she was upset and scared, and she could not communicate with anyone from the Detention Facility about her experience.

170.     At approximately 8:00 a.m., the day nurse visited Ms. Mullen to provide her an insulin shot.

171.     There was no interpreter present at the second visit with the nurse.

172.     Ms. Mullen was unable to communicate with the nurse about the medication being administered by the nurse.

173.     Ms. Mullen was scared and angry because she was unable to communicate with the nurse about her medication(s).

174.     There was no interpreter present at any time Ms. Mullen was detained at the Detention Facility.

175.     During her entire night at the Detention Facility, Ms. Mullen was unable to communicate about her physical, mental, and emotional health.

THE ADAMS COUNTY COURTHOUSE HAD AN ASL INTERPRETER FOR MS. MULLEN

176.     After spending the night at the Detention Facility, Ms. Mullen was taken to the Adams County Courthouse.

177.     The Detention Facility notified the courthouse that Ms. Mullen was deaf and communicates using ASL.

178.     Upon arriving at the courthouse, the Court provided an ASL interpreter for Ms. Mullen to understand the legal proceedings.

179.     The Detention Facility chose to ignore Ms. Mullen's disability while Ms. Mullen was feeling very vulnerable during the arrest and detention.

180.     Ms. Mullen has suffered and will continue to suffer damages in an amount to be proven at trial.

## V.     CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
(The Board - Section 504; 29 U.S.C. § 794)

181.    Ms. Mullen hereby incorporates the previous allegations as if fully set forth herein.

182.    Section 504 prohibits discrimination on the basis of disability by recipients of federal financial assistance including the operations of any department, agency, or other instrumentality of a state or local government. 28 U.S.C. §794(a); (b)(1)(A).

183.    The Board is a recipient of federal financial assistance.

184.    Ms. Mullen is deaf and physically disabled, and she is an individual with a disability within the meaning of Section 504. 29 U.S.C. § 705(9) (incorporating by reference 42 U.S.C. § 12102).

185.    Ms. Mullen was qualified to participate in services provided by the Board at the Detention Facility within the meaning of Section 504.

186.    The Board has injured Ms. Mullen in violation of 29 U.S.C. § 794 and its implementing regulations, by engaging in discriminatory acts or practices including, but not limited to, the following:

    a.  Intentionally discriminating against Ms. Mullen by restricting the budget for the provision of ASL interpreters at the Detention Facility.

    b.  Intentionally discriminating against Ms. Mullen by restricting the budget for the provision of physical accommodations for amputees at the Detention Facility.

    c.  Failing to conduct any investigation to determine the proper auxiliary aids, which were necessary and appropriate, for Ms. Mullen to participate and

have equal access to Defendant's facilities, services, programs, and activities.

    d.   Failing to make reasonable modifications and accommodate Ms. Mullen's physical disability.

    e.   Contracting with a third-party healthcare services company that refuses to provide reasonable accommodations to individuals with disabilities.

187.    The Board's actions described in this Complaint were intentional and/or were taken with deliberate indifference to the strong likelihood that pursuit of its questioned policies would likely result in a violation of Ms. Mullen's rights under Section 504.

188.    As a direct and proximate result of the acts, omissions, and violations alleged above, Ms. Mullen has suffered damages, both real and intangible, including, but not limited to, pain and suffering, humiliation, inconvenience, physical injury, and emotional distress.

189.    Ms. Mullen has been injured and aggrieved by and will continue to be injured and aggrieved by the Board's discrimination.

190.    Ms. Mullen is entitled to compensatory damages, attorneys' fees and costs and any other relief to the fullest extent permitted by law and in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
(The Sheriff - Section 504; 29 U.S.C. § 794)

191.    Ms. Mullen hereby incorporates the previous allegations as if fully set forth herein.

192.     Section 504 prohibits discrimination on the basis of disability by recipients of federal financial assistance including the operations of any department, agency, or other instrumentality of a state or local government. 28 U.S.C. §794(a); (b)(1)(A).

193.     The Sheriff is a recipient of federal financial assistance.

194.     Ms. Mullen is deaf and physically disabled, and she is an individual with a disability within the meaning of Section 504. 29 U.S.C. § 705(9) (incorporating by reference 42 U.S.C. § 12102).

195.     Ms. Mullen was qualified to participate in Sheriff's services provided at the Detention Facility within the meaning of Section 504.

196.     The Sheriff has injured Ms. Mullen in violation of 29 U.S.C. § 794 and its implementing regulations, by engaging in discriminatory acts or practices including, but not limited to, the following:

   a.   Intentionally discriminating against Ms. Mullen by refusing to provide ASL interpreters.

   b.   Failing to make reasonable modifications in policies, practices, or procedures, when such modifications were necessary to afford Ms. Mullen with access to the Sheriff's services, programs, or activities, and when such modifications would not be unduly burdensome and would not fundamentally alter the nature of services provided by the Sheriff.

   c.   Excluding Ms. Mullen from and denying Ms. Mullen from participation in the benefits of the Sheriff's services, programs, or activities solely by reason of Ms. Mullen's disability.

    d.   Failing to conduct any investigation to determine the proper auxiliary aids, which were necessary and appropriate, for Ms. Mullen to participate and have equal access to the Sheriff's facilities, services, programs, and activities.

    e.   Failing to make reasonable modifications and accommodate Ms. Mullen's physical disability.

    f.   Contracting with a third-party healthcare services company that refuses to provide reasonable accommodations to individuals with disabilities.

197.    The Sheriff's actions described in this Complaint were intentional and/or were taken with deliberate indifference to the strong likelihood that pursuit of its questioned policies would likely result in a violation of Ms. Mullen's rights under Section 504.

198.    As a direct and proximate result of the acts, omissions, and violations alleged above, Ms. Mullen has suffered damages, both real and intangible, including, but not limited to, pain and suffering, humiliation, inconvenience, physical injury, and emotional distress.

199.    Ms. Mullen has been injured and aggrieved by and will continue to be injured and aggrieved by the Sheriff's discrimination.

200.    Ms. Mullen is entitled to compensatory damages, attorneys' fees and costs and any other relief to the fullest extent permitted by law and in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
(WellPath, LLC - Section 504; 29 U.S.C. § 794)

201.    Ms. Mullen hereby incorporates the previous allegations as if fully set forth herein.

202.    Section 504 prohibits discrimination on the basis of disability by recipients of federal financial assistance including the operations of any department, agency, or other instrumentality of a state or local government. 28 U.S.C. §794(a); (b)(1)(A).

203.    WellPath, LLC is a recipient of federal financial assistance.

204.    Ms. Mullen is deaf and physically disabled, and she is an individual with a disability within the meaning of Section 504. 29 U.S.C. § 705(9) (incorporating by reference 42 U.S.C. § 12102).

205.    Ms. Mullen was qualified to participate in WellPath's medical services, which were provided at the Detention Facility, within the meaning of Section 504.

206.    WellPath, LLC has injured Ms. Mullen in violation of 29 U.S.C. § 794 and its implementing regulations, by engaging in discriminatory acts or practices including, but not limited to, the following:

g.   Intentionally discriminating against Ms. Mullen by refusing to provide ASL interpreters during medical visits.

h.   Failing to make reasonable modifications in policies, practices, or procedures, when such modifications were necessary to afford Ms. Mullen with access to WellPath's services, programs, or activities, and when such modifications would not be unduly burdensome and would not fundamentally alter the nature of services provided by WellPath.

    i.   Excluding Ms. Mullen from and denying Ms. Mullen from participation in the benefits of WellPath's services, programs, or activities solely by reason of Ms. Mullen's disability.

    j.   Failing to conduct any investigation to determine the proper auxiliary aids, which were necessary and appropriate, for Ms. Mullen to participate and have equal access to WellPath's facilities, services, programs, and activities.

207.    WellPath's actions described in this Complaint were intentional and/or were taken with deliberate indifference to the strong likelihood that pursuit of its questioned policies would likely result in a violation of Ms. Mullen's rights under Section 504.

208.    As a direct and proximate result of the acts, omissions, and violations alleged above, Ms. Mullen has suffered damages, both real and intangible, including, but not limited to, pain and suffering, humiliation, inconvenience, physical injury, and emotional distress.

209.    Ms. Mullen has been injured and aggrieved by and will continue to be injured and aggrieved by WellPath's discrimination.

210.    Ms. Mullen is entitled to compensatory damages, attorneys' fees and costs and any other relief to the fullest extent permitted by law and in an amount to be determined at trial.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Ms. Mullen respectfully requests a trial by jury on all issues so triable, damages, and injunctive relief, as follows:

1.      The Court assume jurisdiction.

2.      The Court declare that the actions of Defendants described in this Complaint are in violation of under Section 504 of the Rehabilitation.

3.      The Court award Ms. Mullen damages and relief including compensatory damages to the maximum extent permitted by law.

4.      The Court award Ms. Mullen her reasonable attorney's fees and costs.

5.      The Court award additional or alternative relief that may be just, proper, appropriate, and equitable under the circumstances.

Dated: November 8, 2021

Respectfully submitted,

*s/ Spencer J. Kontnik*
Spencer J. Kontnik, #47447
Austin M. Cohen, #46537
Morgan E. Hamrick, #52711
KONTNIK | COHEN, LLC
201 Steele Street, Suite 210
Denver, Colorado 80206
Telephone: (720) 449-8448
E-Mail: skontnik@kontnikcohen.com
E-Mail: acohen@kontnikcohen.com
E-Mail: mhamrick@kontnikcohen.com
Attorneys for Plaintiff CYNTHIA
MULLEN