**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02398-RM-NYW

CYNTHIA MULLEN,

      Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ADAMS, COLORADO;
RICHARD A. REIGENBORN, in his official capacity as the Sheriff of the County of Adams; and
WELLPATH, LLC,

      Defendants.
_____

**ADAMS COUNTY DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**
_____

Ms. Mullen's First Amended Complaint (ECF 16) asserts separate but identical claims against the Board of County Commissioners and Sheriff Reigenborn in his official capacity (the Adams County Defendants) for violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, arising out of Ms. Mullen's 16-hour pre-hearing detention in the Adams County Detention Facility. As a threshold matter, the Board of County Commissioners is not a proper party to this suit because it does not oversee the operations of the Detention Facility or the Sheriff's deputies. Beyond that, Ms. Mullen's Rehabilitation Act claim presents two relatively unexplored legal issues – (1) whether Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, allows for unintentional discrimination claims based merely on failures to accommodate, and (2) whether a governmental entity may be held vicariously liable for the acts of its employees and agents under Section 504.

1

It is often assumed the answer to the first issue is yes. But the issue is seldom directly addressed. The statutory language of the Rehabilitation Act, however, compels a negative answer. As for the second issue, the U.S. Supreme Court has reserved it in a related context as recently as 2015 in *City & County of San Francisco v. Sheehan*, 575 U.S. 600 (2015). The U.S. Court of Appeals for the Tenth Circuit has not yet addressed it. While some circuits have allowed such vicarious liability claims to proceed, the statutory text of the Rehabilitation Act does not authorize vicarious liability claims against governmental entities. As such, the Adams County Defendants respectfully request the Court dismiss Ms. Mullen's complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## CERTIFICATION PURSUANT TO D.C.COLO.LCivR. 7.1

Although D.C.COLO.L.CivR. 7.1(b)(2) provides an exception to the rule to confer for motions filed under Fed. R. Civ. P. 12, the parties have conferred pursuant to Civ. Practice Standard IV.N.2.a regarding the identification of the proper defendants. As a result of that conferral, Plaintiff has previously amended her complaint to address some of these issues. The parties continue to disagree, however, as to whether the Board of County Commissioners is a proper party to this suit, which is addressed in Section I below.

## FACTUAL ALLEGATIONS

Ms. Mullen's 210-paragraph complaint contains numerous allegations against non-parties to this lawsuit. Among other things, Ms. Mullen alleges that between her arrest by a (non-party) officer of the (non-party) Brighton Police Department in the evening of August 24, 2020, and her arraignment in Adams County Court at midday, August 25, 2020, she was in the overnight custody of the Adams County Sherriff's Detention Facility for 16 hours. (FAC at ¶¶ 2, 118-58, 174-79.)

2

Reduced to the allegations involving the Detention Facility, Ms. Mullen, who is deaf, an amputee, and who suffers from diabetes and other medical conditions (*Id.* at ¶¶ 1, 22-31), alleges that during her overnight incarceration, she (1) was denied access to an ASL interpreter by (non-party) prison guards until she arrived at the Adams County courthouse (*Id.* at ¶¶ 95, 106, 111, 125, 133, 138, 144, 174),[1] (2) received inferior medical treatment from a third-party prison medical provider, WellPath (*Id.* at ¶¶ 159-66, 170-73), (3) had to use an uncleaned handicapped restroom (*Id.* at ¶¶ 145-50), (4) had to sleep in a wheelchair chair due to the lack of a sufficiently tall cot that would allow transfer from her wheelchair (*Id.* at ¶¶ 2, 151-57, 167), and (5) was startled awake twice by a (non-party) officer who kicked her chair to get her attention (*Id.* at ¶¶ 158, 168.)

Apart from employees of Wellpath, the various actors at the Detention Facility are alleged to be "staff" and "officers," presumably employed by the Adams County Sheriff's office. (*See*, *e.g.*, *id.* at ¶¶ 124-29, 133-35, 138-39.) The complaint alleges staff and deputies attempted to communicate with Ms. Mullen both by writing and fingerspelling and that they provided her with a video phone. (FAC ¶¶ 133, 134, 141.) She further acknowledges the Detention Facility provided her with the option of sleeping in a wheelchair rather than on a cot due to her physical limitations. (*Id.* at ¶ 153). Ms. Mullen did not find those accommodations adequate, however. (*Id.* at ¶¶ 134-

---

[1] Although not material to the resolution of this motion, the amended complaint is inconsistent as to the extent of Ms. Mullen's ability to read and write in English. At one point, Ms. Mullen alleges without qualification both that she "cannot understand sentences that are written in English" and that she "cannot write sentences in English." (FAC at ¶¶ 27 & 28.) At a later point in the complaint, however, Ms. Mullen alleges that she "immediately wrote [to a non-party medical provider], '[a]m deaf, I use sign language.'" (*Id.* at ¶ 113.) Ms. Mullen's ability to communicate in written English is confirmed by her prior litigation history. *See*, *e.g.*, *Mullen v. S. Denver Rehab., LLC*, No. 18-cv-01552-MEH, 2020 WL 2557501, ¶¶ 2-3, 6, 8, 10, 14, 18 (D. Colo. May 20, 2020) (findings of fact relating to Ms. Mullen's ability to communicate in English through writing).

3

35, 151 & 154-56.) The Detention Facility is alleged to be operated by the Adams County Sheriff, Richard Reigenborn, in his official capacity. (*Id.* at ¶¶ 12, 53.) Ms. Mullen alleges the Board of County Commissioners exercises budgetary "control" over the Sheriff. (*Id.* at ¶¶ 44-49.)

Based on these allegations, Ms. Mullen asserts separate but identical claims against the Board of County Commissioners and Sheriff Reigenborn in his official capacity, for violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and seeks remedies ranging from declaratory judgment to compensatory damages.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when its allegations, taken as true, allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court, however, need not accept conclusory allegations without supporting factual averments. *See Ruiz v. McDonell*, 299 F.3d 1173, 1181 (10th Cir. 2002). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quotations omitted). Thus, mere formulaic recitations of the elements of a cause of action will not suffice to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

As relevant here, Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States [. . .] shall, solely by reason of her or his disability, be excluded from the participation in, be

4

>denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794. The Act defines a "program or activity" as including an "instrumentality of a State or of a local government[.]" *Id.* at 794(b)(1)(A).

For purposes of this motion, the Board of County Commissioners and Sheriff Reigenborn do not dispute that Ms. Mullen has alleged she is a "individual with a disability" who has been "subjected to discrimination" while incarcerated in a "program or activity" – *i.e.*, the Adams County Detention Facility[2] – that receives Federal financial assistance. The alleged discrimination takes the form of a failure to accommodate: individual prison officials or third-party party medical providers denied her the use of an ASL interpreter during her interaction with prison officials and third-party medical providers, failed to otherwise accommodate her deafness through additional use of a video phone during her interactions with prison officials and third-party medical providers, and failed to accommodate her status as an amputee in the provision of a non-standard cot and relying on a wheelchair instead, and using physical contact with her wheelchair to wake her up.[3]

Ms. Mullen's identical Rehabilitation Act claims against the Board of County Commissioners and Sheriff Reigenborn, however, fail for three fundamental and largely legal reasons. First, the Board of County Commissioners is not a proper party to this suit because by

---

[2] The Supreme Court has held under similar language in the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131(a)(B) and 12132, that "[s]tate prisons fall squarely within the statutory definition of 'public entity[,]'" *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 209-10 (1998), which is substantially similar to the Rehabilitation Act's definition of "program or activity," 29 U.S.C. § 794. *See also Marks v. Colo. Dep't of Corr.*, 976 F.3d 1087, 1096 (10th Cir. 2020) (holding both the ADA and the Rehabilitation Act "unambiguously extend to state prison inmates") (quotations and modifications omitted).

[3] On occasion, Ms. Mullen casts these failures to accommodate as "intentional discrimination." *See* FAC at ¶¶ 186(a)-(b) and 196(a). *But see* Section II.C, below.

5

statute it does not oversee the operations of the Detention Facility or the Sheriff's deputies. By law, whatever acts or omissions allegedly occurred at the Detention Facility, they fall within the purview of the Sheriff, in his official capacity. Second, in non-employment cases, the Rehabilitation Act only provides a cause of action for intentional discrimination. It does not provide a private cause of action for the mere failure to accommodate. Third, regardless of whether the Rehabilitation Act allows claims for mere failures to accommodate, the Act does not impose liability (against either the Board of County Commissioners or Sheriff Reigenborn) under a vicarious liability theory. As such, neither the Board of County Commissioners nor Sheriff Reigenborn are liable for the acts of prison officials or third-party medical providers who are alleged to have violated the Act. Because there is no non-conclusory allegation that either the Board of County Commissioners or Sheriff Reigenborn intentionally discriminated against Ms. Mullen, her Rehabilitation Act claim against the defendants must be dismissed.

**I.      The Board of County Commissioners Is Not a Proper Party to This Suit Because It Does Not Oversee the Operations of the Detention Facility or the Sheriff's Deputies.**

Ms. Mullen's first claim for relief is against the Board of County Commissioners for their alleged failure to use their "control of the budget" (FAC ¶¶ 44-49) to force the Sheriff to adopt certain policies or contract with third parties to provide ASL interpreters and additional physical accommodations at the Detention Facility. (*Id.* at ¶ 188.)

The Sheriff is a state constitutional official. Colo. Const., Art. XIV, §§ 8 & 8.5. Under Colorado law, Adams County is a governmental entity that exercises powers within its constitutional and statutory parameters through a board of county commissioners. Colo. Rev. Stat. §§ 30-11-101; 30-11-107. In certain cases, however, various elected officials are tasked by statute

6

with performing certain operations that are paid for with County funds. But in such cases, the elected official is not an agent of the County. *See Bristol v. Bd. Of Cnty. Com'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002) (County Sheriff is distinct from the board of county commissioners); *Sisneros v. County of Pueblo*, 2010 U.S. Dist. LEXIS 51830, *9-10 (D. Colo. May 3, 2010).

By statute, the Sheriff, not the Board of County Commissioners, has exclusive control over policies at the Detention Facility pursuant to Colorado law. *See Sisneros*, 2010 U.S. Dist. LEXIS 51830, at *8-9; Colo. Rev. Stat. §§ 17-26-101 to 103; 30-10-511. In addition, only the County Sheriff, not the Board of County Commissioners, has "the right to supervise and control the [S]heriff's deputies" under Colorado law. *Myers v. Koopman*, No. 09-cv-02802-REB-MEH, 2011 WL 650328, *31-32 (D. Colo. Feb. 11, 2011); *see also* Colo. Rev. Stat. § 30-10-506. In other words, the Board of County Commissioners does not set policy for or control operations at the jail. Nor could it if it tried. *See Richart v. Board of Cty. Comm'rs for Boulder Cty.*, 33 P.2d 971, 972-72 (Colo. 1934) (in a conflict between the powers of the board of county commissioners over property and the Sheriff's power over the jail, the board's powers yield to the Sheriff's). The Board of County Commissioner's budgeting control is limited, and it does not consist in making budget allocations that the responsible officials themselves do not request. *See Johnson v. Bd. of Cty. Commr's for Chafee Cty.*, 483 P.2d 1344, 1346-47 (Colo. 1971) (although the budget process is not a rubberstamp, the official proposes a budget which the board can only challenge based on an arbitrary and capricious standard).

Based on the factual allegations of the complaint, Sheriff Richard Reigenborn in his official capacity is the only proper defendant to Ms. Mullen's claims arising out of policies or conduct at

7

the Detention Facility, assuming any such claims exist. All specific allegations involve the conduct or omissions of staff and deputies at the Detention Facility. The Sheriff is not the County's agent. Nor is there any allegation that the Sheriff made a budgetary request to the Board related to the provision of auxiliary aids for the disabled, which the Board declined. The Board of County Commissioners, therefore, should be dismissed with prejudice because they are not legally responsible for any alleged conduct at the Detention Facility merely because they provide general funds to the Sheriff.

## II. The Rehabilitation Act Does Not Provide a Cause of Action in Non-Employment Cases for a Mere Failure to Accommodate.

This largely legal argument proceeds in three steps: (1) the discrimination standards of Title VI (not the ADA) apply to Ms. Mullen's claim; (2) only intentional discrimination is actionable under Title VI; and (3) Ms. Mullen has not adequately alleged intentional discrimination.

### A. Title VI's Discrimination Standards Rather than the ADA's Discrimination Standards Apply to Ms. Mullen's Claim Because It Does Not Involve Employment.

To begin, it is important to recognize that the Rehabilitation Act is something of a hybrid statute. It is common to categorically assert, for example, that the standards for discrimination under the Rehabilitation Act are the same as those for discrimination under the ADA, 42 U.S.C. § 12131 *et seq.*, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq. *See*, *e.g.*, *Cropp v. Larimer County*, 941 F.3d 1237, *9 & n.5 (10th Cir. 2019) (unpublished) (analyzing ADA and Rehabilitation Act claims simultaneously in case involving incarceration); *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007) (holding in USPS employment case that the court looks "to the ADA for guidance in resolving Rehabilitation Act claims"), *McGeshick v. Principi*,

8

357 F.3d 1146, 1150 (10th Cir. 2004) (looking to the ADA for guidance in case involving a U.S. Department of Veterans Affairs hiring decision). This is true in part, but can be misleading in detail because the Rehabilitation Act does not universally incorporate the provisions of either the ADA or Title VI across all classes of claims arising under the Rehabilitation Act.

Instead, the Rehabilitation Act sets forth the "[s]tandards used in determining [a] violation" of Section 504 as follows:

> The standards used to determine whether this section has been violated in a complaint *alleging employment discrimination* under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201–12204 and 12210), *as such sections relate to employment*.

*Id.* at § 794(d) (emphasis added). In its remedies section, the Act further provides:

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 504 of this Act [29 USCS § 794].

*Id.* at § 794a(a)(2). Thus, the express statutory provisions of the Rehabilitation Act selectively incorporate different provisions of the ADA and Title VI depending on whether the claim at issue involves employment or not. *See Tyler v. City of Manhattan*, 118 F.3d 1400, 1412 (10th Cir. 1997) ("*Where employment discrimination is at issue*, both the Rehabilitation Act and the ADA have been read to incorporate Title VII remedies, not Title VI remedies) (emphasis added*); Johnson v. Ed Bozarth # 1 Park Meadows Chevrolet, Inc.*, 297 F. Supp. 2d 1286, 1290 (D. Colo. 2004) (distinguishing between public-services retaliation and private-sector employment retaliation), *citing Shotz v. City of Plantation*, 344 F.3d 1161, 1169 (11th Cir. 2003). Ms. Mullen does not bring

9

an employment action under the ADA. Therefore, the Rehabilitation Act's incorporation of Title VI standards, not the ADA, are applicable to her claim under the express language of Section 504.

### B. Only Intentional Discrimination Is Actionable Under Title VI.

Section 601 of Title VI of the Civil Rights Act of 1964 (incorporated by the Rehabilitation Act, 29 U.S.C. § 794a(a)(2)) provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI. 42 U.S.C. § 2000d. Unlike Title VII, Title VI does not expressly provide for disparate impact claims. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771-72 (2015) (distinguishing between disparate treatment – *i.e.*, intentional discrimination – and disparate impact theories in the context of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), which expressly prohibits both categories).

In in *Alexander v. Choate*, the Supreme Court made clear that Title VI, unlike Title VII, "directly reaches only instances of intentional discrimination." 469 U.S. 287, 293 (1985). In *Alexander v. Sandoval*, the Supreme Court confirmed that Section 601 "prohibits only intentional discrimination." 532 U.S. 275, 280-81 (2001). The Court further held in *Sandoval* that a party could not sue to enforce a cause of action based on agency regulations providing for disparate impact claims because they do not constitute intentional discrimination. *Id.* at 286-87.

The Court's reading of Title VI is consistent with its construction of the Rehabilitation Act in *Southeastern Community College v. Davis*, 442 U.S. 397 (1979). There the Supreme Court held that ordinarily the Rehabilitation Act does not require a covered entity to engage in "affirmative action" — *i.e.*, an accommodation — as a matter of course. *Id.* at 410-11. While acknowledging

10

the possible existence of an exception where the absence of an accommodation might rise to the level of intentional discrimination, *id.* at 412, the Court held "[t]he language and structure of the Rehabilitation Act of 1973 reflect a recognition by Congress of the distinction between the evenhanded treatment of qualified handicapped persons and affirmative efforts to overcome the disabilities caused by handicaps," with the former, not the latter, mandated by the Act. *Id.* at 410; *accord Choate*, 469 U.S. at 301 (acknowledging that "to assure meaningful access, reasonable accommodations in the grantee's program or benefit *may* have to be made," but holding no such accommodation was necessary in the case at bar) (emphasis added).

Thus, by incorporating Section 601, the Rehabilitation Act covers only claims for intentional discrimination. Any alleged failure to accommodate must, therefore, rise to the level of intentional discrimination to be actionable under the Rehabilitation Act. *Accord Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999) ("We agree with the course charted by our sister circuits and hold that entitlement to compensatory damages under section 504 of the Rehabilitation Act requires proof the defendant has intentionally discriminated against the plaintiff."); *but see Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 146 (1st Cir. 2014) (observing the ADA and Rehabilitation Act entitled the plaintiff "to reasonable accommodations, [but] not to optimal ones finely tuned to his preferences."). That is further born out by the statute's requirement that a claim for discrimination lies only where it is due "solely" to the plaintiff's disability. *See* 29 U.S.C. § 794(a); *see also Crane v. Utah Dep't of Corr.*, No. 20-4032, 2021 U.S. App. LEXIS 31681, *32-33 (10th Cir. Oct. 21, 2021) (the Rehabilitation Act, unlike the ADA, requires the plaintiff's disability be the sole cause of the discrimination, not just a but-for cause).

### C. Ms. Mullen Has Not Adequately Alleged Intentional Discrimination.

To establish intentional discrimination under the Rehabilitation Act, Ms. Mullen must plausibly allege either, (1) the defendant's conduct was fueled by discriminatory animus or (2) the defendant acted with deliberate indifference to the strong likelihood that pursuit of its questioned policies would likely result in a violation of federally protected rights. *See Powers*, 184 F.3d at 1152-53; *see also Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250,1263-64 (10th Cir. 2018); *Cropp*, 941 F.3d at \*17. A mere failure to accommodate by declining to take additional affirmative actions, however, does not rise to the level of intentional discrimination under the Rehabilitation Act. *See Southeastern Community College*, 442 U.S. at 410-11; *see also Choate*, 469 U.S. at 302 (Section 504 does "not . . . guarantee the handicapped equal results"); *Traynor v. Turnage*, 485 U.S. 535, 548 (1988) (Section 504 guarantees only "evenhanded treatment"). This is especially true where the failure to accommodate claim is really a failure to accommodate by providing the particular aid requested by the plaintiff. *See Cropp*, 941 F.3d at \*18 (holding "the County's mere failure to provide [plaintiff] with the precise auxiliary aid he requested" does not "necessarily amount[] to discrimination—let alone intentional discrimination via deliberate indifference" and collecting cases); *see also Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012) (noting that "failure to provide an interpreter on request is not necessarily deliberately indifferent to an individual's rights" under the Rehabilitation Act); *Petersen v. Hastings Pub. Sch.*, 31 F.3d 705, 708-09 (8th Cir. 1994) (rejecting plaintiffs' argument that school district violated Title II by refusing to "utilize the signing system" of plaintiffs' choice).

In short, the complaint contains no concrete factual allegation from which a plausible inference can be drawn that the Detention Facility intentionally discriminated against Ms. Mullen

because of her disabilities either through direct animus or through deliberate indifference. Deliberate indifference is not shown through negligence or "bureaucratic slippage." *See Barber v. Colorado*, 562 F.3d 1222, 1229 (10th Cir. 2009) *and Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). It requires an "element of deliberateness." *Barber*, 562 F.3d at 1220. More specifically, it requires the actor to have knowledge that his or her course of conduct would result in a substantial likelihood of harm to the plaintiff's federally protected rights. *Havens*, 897 F.3d at 1266. Ms. Mullen's complaint is devoid of any allegations regarding Sheriff Reigenborn's knowledge, or that of his subordinates.

Nor is the substance of Ms. Mullen's failure to accommodate theory an established part of her federally protected rights under the Rehabilitation Act of which the Sheriff (or his agents) could be aware. Ms. Mullen's allegations assert nothing more than the Detention Facility's failure to accommodate the specific form of her requests. The allegations reveal that Detention Facility staff and deputies attempted to accommodate Ms. Mullen's disabilities during the brief overnight period in which Ms. Mullen was incarcerated. The complaint alleges staff attempted to communicate with her both by writing and fingerspelling and that it provided her with a video phone. (FAC ¶¶ 133, 134, 141.) She further acknowledges the Detention Facility provided her with the option of sleeping in a wheelchair rather than on a cot due to her physical limitations. (*Id.* at ¶ 153). Ms. Mullen did not find those accommodations adequate. (*Id.* at ¶¶ 134-35 ("fingerspelling is tedious and ineffective") & 151 (Ms. Mullen attempted to communicate "she needed a *specific* bed due to her physical handicap") (emphasis added) & 154-56 (deputies brought an "old rickety wheelchair" to sleep in instead of the cot that was "too low to the ground"). But that is not what the Rehabilitation Act requires (at least not in a non-employment context). The fact that the

13

Detention Facility staff underwent an iterative series of attempts to communicate with and accommodate Ms. Mullen over the short 16-hour window she was in custody (even if she finds them inadequate) is evidence of the staff's *lack* of indifference to Ms. Mullen's circumstances. *See McCulley v. Univ. of Kan. Sch. of Med.*, 591 F. App'x 648, 651 (10th Cir. 2014) (unpublished).

As such, Ms. Mullen fails to state a claim for intentional discrimination under the Rehabilitation Act.

### III. Governmental Entities May Not Be Held Vicariously Liable for the Acts of Their Employees and Agents under Section 504.

Ms. Mullen's second claim for relief is against the Sheriff for violation of the Rehabilitation Act for conduct arising out of Ms. Mullen's treatment while incarcerated at the detention facility. (FAC ¶¶ 191, 197-198.) Although Ms. Mullen casts her treatment as being "[t]he Sheriff's actions," (*id.* at ¶ 197), the complaint contains no allegations of any personal or official action undertaken by Sheriff Reigenborn. The alleged mistreatment of, and failure to accommodate Ms. Mullen, during her incarceration are directly tied to the actions of the Detention Facility staff and deputies, or to the employees of the third-party medical provider. (FAC ¶¶ 191, 197-198.) Ms. Mullen's second claim for relief simply imputes those actions to Sheriff Reigenborn in a conclusory manner. Sheriff Reigenborn is not alleged to have participated in those actions or to have even been aware them. In other words, Ms. Mullen's second claim for relief proceeds on a theory of vicarious liability.

As the Supreme Court has recently advised, courts and litigants should not simply presume all anti-discrimination statutes operate the same way, especially with regards to vicarious liability. As recently as 2015, in *City & County of San Francisco v. Sheehan*, the Supreme Court dismissed certiorari as improvidently granted on the issue of whether Title II of the ADA allows for vicarious

liability against public entities. 575 U.S. 600, 610 (2015). It did so despite the agreement of the parties that it did and despite precedent in the circuit court of appeals allowing for such claims. *Id.*; *cf. Duvall*, 260 F.3d at 1141 (9th Cir. 2001) (allowing for vicarious liability in ADA, Title II cases). The Court reminded the parties that "we have never decided whether that is correct, and we decline to do so here, in the absence of adversarial briefing." *Id.*

With the respect to vicarious liability under the Rehabilitation Act, the Tenth Circuit does not appear to have addressed this issue. *See Amparo & Robert Mata v. Bd. of Educ. of Las Cruces Pub. Schs*, No. 12-CV-00136 MCA/SMV, 2013 U.S. Dist. LEXIS 207141, *8-9 (D.N.M. May 21, 2013). The Adams County Defendants acknowledge that several circuits have allowed vicarious liability as a theory for Rehabilitation Act claims. *See Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574-75 (5th Cir. 2002) (allowing for vicarious liability and collecting authorities); *Duvall*, 260 F.3d at 1141 (9th Cir. 2001) (same); *Rosen v. Montgomery Cnty. Md.*, 121 F.3d 154, 157 n.3 (4th Cir. 1997) (same). Respectfully, however, those circuits have not adequately addressed the impact of the Supreme Court's decision in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 290 (1998), which ruled out vicarious liability under Title IX.

As relevant here, Title IX provides in pertinent part that a person cannot "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," 20 U.S.C. § 1681(a); language that is nearly identical to that of the Rehabilitation Act. *Compare* 29 U.S.C. § 794. In *Gebser*, the Supreme Court held that a school district could not be held liable under Title IX of the Education Amendments of 1972 "unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [district]'s behalf has *actual knowledge*

15

of discrimination." 524 U.S. 274, 290 (1998) (emphasis added). The Court based its analysis on the fact that Title IX (unlike Title VII) does *not* contain an express cause of action. *Id.* at 283-84. The Court reasoned that the implied cause of action available under Title IX was limited to only direct liability because of the contractual nature of Title IX— *i.e.*, that in exchange for federal funds, the recipient agrees not to discriminate on an impermissible basis, but not to be liable for the acts of its employees. *Id.* at 285-86. This interpretation was consistent, the Court held, with the statute's express enforcement mechanism that requires notice of a violation to the "appropriate person" and the potential for voluntary compliance before administrative enforcement proceedings can commence. *Id.* at 288-89. In so holding, *Gebser* insulated public entities from liability under Title IX on a theory of vicarious liability. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642-43 (1999) ("The high standard imposed in *Gebser* sought to eliminate any 'risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions.'"), *quoting Gebser*, 524 U.S. at 290-291.

In addition to incorporating (albeit in different classes of cases) the discrimination standards under the ADA, 42 U.S.C. § 12131 *et seq.*, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq., the Rehabilitation Act was also modeled on several substantially similar statutes, such as Title IX of the Education Amendments of 1972. *See Pushkin v. Regents of Univ. of Colo.*, 658 F.2d 1372, 1378 (10th Cir. 1981) (quoting S.Rep.No. 93-1297, 93 Cong. 2d Sess. 39-40, reprinted in 4 U.S.Code Cong. and Admin.News, pp. 6373, 6391 (1974)). Cases construing Title IX, therefore, provide meaningful precedent as to how courts should construe the related portions of the Rehabilitation Act. *See Pushkin*, 658 F.2d at 1379-80 (holding the Rehabilitation

16

Act has an implied right of action based on Title IX precedent), applying *Cannon v. University of Chicago*, 441 U.S. 677 (1979).

*Gebser*'s ruling under Title IX should control the analysis for the substantially similar provisions in the Rehabilitation Act. *See Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348-49 & n. 10 (11th Cir. 2012) (applying deliberate indifference standard under Section 504 of Rehabilitation Act in light of *Gebser*). The Rehabilitation Act contains nearly identical operative language to Title IX. *Compare* 20 U.S.C. § 1681(a) and 29 U.S.C. § 794. The Rehabilitation Act lacks an express cause of action as does Title IX. *See Pushkin*, 658 F.2d at 1379-80 (Rehabilitation Act has an implied cause of action); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 284-85 (2d Cir. 2003) (same through its incorporation of Title VI). The Rehabilitation Act is Spending Clause legislation that is "contractual" in nature in the same way as Title IX. *See Barnes v. Gorman*, 536 U.S. 181, 186-87, 189 & n.3 (2002) (contractual analogy applies to Spending Clause legislation and the Rehabilitation Act is Spending Clause legislation). The Rehabilitation Act contains the same enforcement mechanism requiring notice and an opportunity to voluntarily cure (through its incorporation of Title VI, *see* 42 U.S.C. § 2000d-1) as Title IX. *See United States v. Florida*, 938 F.3d 1221, 1250 (11th Cir. 2019); *see also Henrietta D*, 331 F.3d at 284-85. In short, there is no legally significant reason why the Rehabilitation Act should be construed to allow vicarious liability after *Gebser*.

The Adams County Defendants (more properly, the Sheriff) are liable, therefore, only for their own official actions under the Rehabilitation Act. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

17

The complaint is devoid of any specific factual allegation regarding the Sheriff's acts or omissions beyond conclusory allegations of discrimination or the imputed actions of staff, deputies, or third parties. As such, Ms. Mullen's Rehabilitation Act claims against the Adams County Defendants should be dismissed with prejudice.

## CONCLUSION

The Rehabilitation Act does not afford Ms. Mullen the relief she seeks for the conduct she alleges against the Adams County Defendants as a matter of law. The Adams County Defendants, therefore, respectfully request Ms. Mullen's First Amended Complaint (ECF 16) be dismissed with prejudice.

DATED: November 29, 2021.

    Respectfully submitted,

    *s/Michael A. Sink*
    Michael A. Sink
    Assistant County Attorney
    Adams County Attorney's Office
    4430 S. Adams County Pkwy
    5th Floor, Suite C5000B
    Brighton, CO  80601
    Phone: (720) 523-6116
    Fax: (720) 523-6114
    msink@adcogov.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Michael A. Sink*
Michael A. Sink
Assistant County Attorney
Adams County Attorney's Office
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone:  (720) 523-6116
Fax:  (720) 523-6114
msink@adcogov.org