**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02398-RM-NYW

CYNTHIA MULLEN,

     Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS FOR ADAMS COUNTY, COLORADO;
RICHARD A. REIGENBORN, in his official capacity as the Sheriff of the County of Adams; and
WELLPATH, LLC.

     Defendants.

_____

**DEFENDANTS BOARD OF COUNTY COMMISSIONERS FOR ADAMS COUNTY,
COLORADO AND RICHARD A. REIGENBORN'S OBJECTIONS TO
RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE**

_____

     Defendants, the Board of County Commissioners for Adams County, Colorado and Richard A. Reigenborn, through their counsel of record, the Adams County Attorney's Office, respectfully submit their objections to the Recommendations of United States Magistrate Judge (ECF 49) in connection with the Adams County Defendants' Motion to Dismiss (ECF 22).

### STANDARDS

     When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge

1

may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the absence of a timely objection, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.")).

## OBJECTIONS

The Magistrate Judge recommended the Adams County Defendants' motion to dismiss be granted in part and denied in part. The Adams County Defendants object to the recommendation of the denial in part of their motion to dismiss. In particular, Sheriff Richard A. Reigenborn, in his official capacity, objects to Sections I.B, I.C and I.D of the Magistrate Judge's Recommendation. The detailed objections follow. They stem from three legal principles:

1. In non-employment cases, the statutory text of the Rehabilitation Act adopts Title VI standards, not ADA standards.

2. The Sheriff is not vicariously liable for the acts of his employees; and

3. Failure to accommodate claims are not the same as intentional discrimination claims.

These objections are presented to the Magistrate Judge's Recommendations in a different order – namely Sections I.B, I.D, then I.C.

**Objection 1:   The Magistrate Judge's Recommendation Regarding the Nondismissal of Sheriff Reigenborn Erroneously Relies Upon ADA Standards and Did Not Differentiate Between Employment and Non-employment Cases as Required by the Statutory Language in 29 U.S.C. §§ 794(d) and 794a(a)(2).**

In Section I.A of the Magistrate Judge's recommendation (to which recommendation the Adams County Defendants do not otherwise object), the Magistrate Judge quoted from *Montez v. Romer*, 32 F. Supp. 2d 1235, 1239 (D. Colo. 1999) (citations omitted), for the proposition that "As a general matter, courts have construed the Rehabilitation Act and the [ADA] similarly." (Recom. at 11.) When the Magistrate Judge next turned in Section I.B of the Recommendation to the issue of whether failure to accommodate claims are available under the Rehabilitation Act, the Magistrate Judge again relied on *Romer* and continued with the assertion that the elements of a Rehabilitation Act claim should be the same as those of the ADA. (Recom. at 17.) The Magistrate Judge also cited *Tivis v. Dowis*, No. 11-cv-02-50-PAB-KMT, 2014 WL 4413216, * 6 (D. Colo. Sept. 8, 2014), and later *Havens v. Colo. Dep't of Corrections*, 897 F. 3d 1250, 126[3] (10th Cir. 2018) and *Partridge v. Smith*, No. 17-cv-02941-CMA-STV, 2020 WL 897653, *6 (D. Colo. Feb. 25, 2020) in support of that parallel treatment. (*Id.* at 17-18.) The Magistrate Judge then looked to ADA caselaw that allows for failure to accommodate claims. From there, the Magistrate Judge's recommendation follows: a plaintiff in a non-employment action under the Rehabilitation Act can proceed under a failure to accommodate theory.

But, respectfully, the Magistrate Judge's analysis errs at the first step as a matter of law. As set forth in the motion to dismiss, the Rehabilitation Act and the ADA are to be construed similarly *only* in employment cases, which this case is not. That distinction comes from the statutory text of the Rehabilitation Act. The Rehabilitation Act sets forth the "[s]tandards used in determining [a] violation" of Section 504 as follows:

> The standards used to determine whether this section has been violated in a complaint *alleging employment discrimination* under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of

> the Americans with Disabilities Act of 1990 (42 U.S.C. 12201–12204 and 12210),
> *as such sections relate to employment*.

29 U.S.C. § 794(d) (emphasis added). The ADA, therefore, is not incorporated in non-employment

cases. In the Act's remedies section, it further provides:

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of
> 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act
> (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be
> available to any person aggrieved by any act or failure to act by any recipient of
> Federal assistance or Federal provider of such assistance under section 504 of this
> Act [29 USCS § 794].

*Id.* at § 794a(a)(2). Thus, the express statutory provisions of the Rehabilitation Act selectively

incorporate different provisions of the ADA and Title VI depending on whether the claim at issue

involves employment or not. *See Tyler v. City of Manhattan*, 118 F.3d 1400, 1408 (10th Cir. 1997)

("[S]ection 505 of the Rehabilitation Act incorporates two separate and very distinct sets of

remedies, procedures, and rights.") (quotation omitted); *see also Johnson v. Ed Bozarth # 1 Park

Meadows Chevrolet, Inc.*, 297 F. Supp. 2d 1286, 1290 (D. Colo. 2004) (distinguishing between

public-services retaliation and private-sector employment retaliation), *citing Shotz v. City of

Plantation*, 344 F.3d 1161, 1169 (11th Cir. 2003).

The distinction between the ADA standard that is to be applied in employment cases and

the Title VI standard that is to be applied in non-employment cases is a material one. In a Title VI

case, there is no ability to assert a mere failure to accommodate theory. *See Alexander v. Sandoval*,

532 U.S. 275, 280-81 (2001) (Section 601 "prohibits only intentional discrimination."); *Exby-

Stolley v. Bd. of Cty. Comm'rs*, 979 F.3d 784, 796 (10th Cir. 2020) (en banc) ("[F]ailure-to-

accommodate claims concern an omission rather than an action; such claims allege that the

employer discriminated against the employee by not satisfying *an affirmative, ADA-created duty*

to provide reasonable accommodations"); *see also id.* at 827 (McHugh, dissenting) (distinguishing between failure to accommodate ADA claims and intentional discrimination ADA claims). Thus, in *Sandoval*, the Court held a party could not assert a cause of action based on agency regulations providing for disparate impact claims because they do not constitute intentional discrimination. *Id.* at 286-87. 29 U.S.C. § 794(d) requires that Title VI standards should be applied to non-employment claims like Ms. Mullen's that are brought under Section 504. And, as in *Sandoval*, regulations promulgated by the Department of Justice pursuant to the ADA cannot modify the applicable statutory standards under the Rehabilitation Act. (*Contra* Recom. at 17, citing *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007), quoting 28 C.F.R. § 35.130(b)(7).)

The Magistrate Judge's Recommendation did not address the statutory language (or the Title VI standard). Instead, the Magistrate Judge "assume[d]" the availability of a failure to accommodate theory solely based on the case law cited regarding the ADA. (Recom. at 18.) But the language of the case law relied upon by the Magistrate Judge is significantly qualified. *See*, *e.g.*, *Romer*, 32 F. Supp. 2d at 1239 ("As a *general matter…* similarly.") (emphasis added). The case *Romer* relied upon, moreover, *Patton v. TIC United Corp.*, 77 F.3d 1235, 1245 (10th Cir. 2006), similarly limits the overlap in caselaw to only "the extent feasible" and to "analogous provisions," not as to the statutes as a whole. (*Cf.* Recom. at 12.) And even when the parallelism between the two statutes is not so qualified, none of the cases cited by the Magistrate Judge address the relevant statutory language at issue here.

As for *Havens*, its applicability only comes from the fact it involved a plaintiff who was an inmate at the Colorado Department of Corrections and who brought a failure to accommodate

claim under the Rehabilitation Act. 897 F.3d 1250, 1262-63 (10th Cir. 2018). But again, no party in *Havens* raised the statutory issue presented here. Mere factual similarity and assumed legal premises do not stare decisis make. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."). Thus, the passing discussion of the elements of Section 504 claim does not control over the plain statutory language in 29 U.S.C. §§ 794(d) and 794a(a)(2). This is borne out by the fact that in other subsequent cases, the Tenth Circuit has still observed a distinction between Rehabilitation Act and ADA claims. *See Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312-13 (10th Cir. 2021) (observing a difference in causation standards between the two statutes).[1] The Court should do likewise here and dismiss Ms. Mullen's failure to accommodate claim against Sheriff Reigenborn.

**Objection 2:  The Magistrate Judge's Recommendation Regarding the Nondismissal of Sheriff Reigenborn Erroneously Relied Upon ADA Standards and Not Title IX Standards When Determining the Availability of a Vicarious Liability Theory under the Rehabilitation Act.**

In Section I.D of the Recommendation, the Magistrate Judge recommended the denial of Sheriff Reigenborn's motion to dismiss Ms. Mullen's vicarious liability claim against him. (Recomm. at 25.) The Magistrate Judge did so based on four U.S. Court of Appeals decisions from other circuits wherein those courts permitted a plaintiff to assert a vicarious liability theory under

---

[1] The importance of the distinction between the Rehabilitation Act and Title VI, on the one hand, and the ADA on the other was again on display in the Supreme Court's recent decision in *Cummings v. Premier Rehab Keller, PLLC*, No. 20-219, 2022 U.S. LEXIS 2230 *10 (April 28, 2022), which eliminated the availability of damages for emotional distress in the former category of cases. The Adams County Defendants have also filed a motion to strike Ms. Mullen's request for a jury demand based on a similar distinction reflected in 42 U.S.C. § 1981a(a)(2). *See* ECF No. 50, Motion to Strike at 4-5.

the Rehabilitation Act. (*Id.* at 24-25, citing *Duvall v. Cty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001);

*Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002); *Rosen v. Montgomery Cty.*

*Maryland*, 121 F.3d 154 (4th Cir. 1997); *Gray v. Cummings*, 917 F.3d 1 (1st Cir. 2019); and *Silk*

*v. City of Chicago*, 194 F.3d 788, 795 (7th Cir. 1999)).

No Tenth Circuit decision, however, has ever so held.[2] And some of the decisions relied

upon by the Magistrate Judge predate (or rely on a line of cases that predate) the Supreme Court's

decision in *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274 (1998). Those that do

not predate it are manifestly inconsistent with it. *Gebser* categorically eliminates vicarious liability

claims under Title IX. *See* 524 U.S. at 285 & 290. This is significant in this case because, although

*Gebser* was not decided under the Rehabilitation Act, the Supreme Court (and the Tenth Circuit)

have repeatedly looked to Title IX to interpret the Rehabilitation Act. *See Barnes v. Gorman*, 536

U.S. 181, 185-89 (2002) (looking to Title IX case law to delineate the scope of private damages

remedies available under the Rehabilitation Act); *Consol. Rail Corp. v. Darrone*, 465 U.S. 624,

635-36, (1984) (same as to the term "program or activity receiving Federal financial assistance"

in the Rehabilitation Act); *Pushkin v. Regents of University of Colo.*, 658 F.2d 1372, 1379-80 (10th

Cir. 1981) (same as to the existence of a private right of action).

A U.S. Supreme Court decision on point under Title IX should, therefore, control the

Court's analysis of Rehabilitation Act claims over out-of-circuit court of appeals decisions—

especially where as here the plaintiff is invoking provisions that expressly incorporate Title VI,

---

[2] Nor has the Tenth Circuit ever held that either Title VI of Civil Rights Act or Title II of the ADA allow for vicarious liability claims. The Sixth Circuit has recently read *Gebser* as also foreclosing vicarious liability under Title II of the ADA. *See Jones v. City of Detroit*, 20 F.4th 1117, 1118 (6th Cir. Dec. 21, 2021).

not Title III of the ADA. *See Barnes*, 536 U.S. at 185 ("[T]he [Supreme] Court has interpreted Title IX consistently with Title VI."). Moreover, the Supreme Court's recent decision in *Cummings* further establishes the aptness of interpreting Title VI and the Rehabilitation Act together as Spending Clause legislation, rather than in parallel with the ADA, which is not. *See Cummings*, 2022 U.S. LEXIS 2230 at *10; *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1170 (10th Cir. 2015) (noting different constitutional bases for the enactment of the Rehabilitation Act and Title III of the ADA).

As for the Magistrate Judge's reading of *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012) in support of the proposition that the actions of employees may be attributed to their employer under the Rehabilitation Act, the Eleventh Circuit expressly did not address the availability of respondeat superior or vicarious liability as a theory because the plaintiffs had not timely raised it. *See* 701 F.3d at 349, n. 10 ("The plaintiffs' mention of vicarious liability as an appropriate standard in one sentence in their reply brief constitutes a waiver of this argument. *We need not determine the applicability of such a standard as a result*, but we do note that several circuits have found respondeat superior liability to apply to suits brought under the Rehabilitation Act.") (emphasis added and citations omitted). The language in *Liese* relied upon by the Magistrate Judge was, therefore, not a determination of the availability of vicarious liability under the Rehabilitation Act.

Rather, the language in *Liese* relied upon by the Magistrate Judge addressed a different issue of corporate law: which employees' conduct can be attributed to a *corporate entity*, namely the Indian River Memorial Hospital, *Inc.*, as its own conduct. *Id.* at 348 ("whether the deliberate indifference of IRMH's medical personnel can be attributed to the Hospital so that *IRMH can fairly*

*be said to have acted* with deliberate indifference."). *Liese* did no more than hold that doctors and nurses' conduct could be attributed to the corporate hospital employer as the corporation's conduct. *Cf. Gebser*, 524 U.S. at 290 (Title IX claim against an entity requires actual notice to an "appropriate person" who is in a position to implement anti-discrimination measures, but who did not respond adequately after the opportunity to do so); *accord* A.V. through Hanson. But here, Sheriff Reigenborn is an elected official, not a corporate or even governmental entity. Only his conduct is his own. *Liese*'s analysis on this point, therefore, is inapplicable. What *Liese* did squarely hold, however, is that the *Gebser*'s analysis should be applied to Rehabilitation Act claims too.[3] This the Magistrate Judge did not do.

**Objection 3:  The Magistrate Judge's Recommendation Regarding the Nondismissal of Sheriff Reigenborn Did Not Require the Necessary Level of Allegations for Intentional Discrimination by the Sheriff.**

In Section I.C of the Recommendation, the Magistrate Judge's analysis blends two distinct issues, which are worth separating out. The first issue is the identity of the Defendant: here, Sheriff Richard A. Reigenborn, in his official capacity. The Magistrate Judge's Recommendation in Section I.C starts with a footnote that the Detention Facility staff's conduct "is a necessary component of the question of the availability to Plaintiff of a vicarious liability claims against Defendant Reigenborn." (Recom. at 18.) In support, the Magistrate Judge cites to *A.V. through Hanson v. Douglas County Sch. Dist. RE-1*, No. 21-cv-0704-WJM-SKC, 2022 WL 504138, at *8 n.4 (D. Colo. Feb. 18, 2022), which dealt with vicarious liability. As argued in Objection 2 above, that theory is unavailable for Rehabilitation Act claims.

---

[3] The Eleventh Circuit has recently confirmed this holding as to not only Title VI, but also Title II of the ADA (albeit in a case where the Rehabilitation Act claim was voluntarily dismissed). *See Ingram v. Kubik*, 30 F.4th 1241, *32-34 (11th Cir. April 7, 2022).

But the Magistrate Judge's Recommendation appears to go further than just relying on the availability of a vicarious liability theory as adopted in *A.V. through Hanson*. The Magistrate Judge first identifies "the relevant issue here" as "whether Plaintiff has plausibly alleged deliberate indifference by the staff at the Detention Facility." (Recom. at 19.) This time the Magistrate Judge relies upon *Partridge v. Smith*, No. 17-cv-02941-CMA-STV, 2020 WL 897653, at *6 (D. Colo. Feb. 25, 2020).[4] *Partridge*, however, is not a vicarious liability case. It mostly involved claims asserted directly against the Sheriff's deputies involved in the plaintiff's arrest and incarceration, which is not the case here. As for the claims against the "Sheriff's Office," which is not a legal entity, the Court in *Partridge* assumed that it was an entity and further assumed that the acts of the deputies were attributable to it. *See Partridge*, 2020 WL 897653, at *20, 27, 33-34.

Sheriff Reigenborn, however, is an elected official. He is not a legal entity. As such, as observed above, only his conduct is his own. Title VI (and Title IX) claims require *the defendant* "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to" the programs at issue. *Bryant v. Indep. Sch. Dist. No. I-38*, 334 F.3d 928, 934 (10th Cir. 2003) (quotation omitted); *see* 29 U.S.C. § 794a(a)(2). The complaint does not allege that Sheriff Reigenborn interacted with Ms. Mullen at all or was even aware she was incarcerated in the Detention Facility for 16 hours. In short, there are no direct claims alleged against the Sheriff.

---

[4] The Magistrate Judge cited page 6 of the opinion and parenthetically described it as "analyzing a failure-to-accommodate theory under the Rehabilitation Act and ADA together"). The *Partridge* court's parallel analysis of both claims is found at *15-18 and *23-38.

The Magistrate Judge's analysis of *Liese* and invocation of *Partridge* on grounds other than vicarious liability raise another difficulty—namely the definition of "entity" under the Rehabilitation Act. As applicable here, Section 504 governs "any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). "Program or activity" is defined in relevant part as:

> all of the operations of—(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

29 U.S.C. § 794(b). The Tenth Circuit has held that both the ADA and the Rehabilitation Act "unambiguously extend to state prison inmates." *Marks v. Colo. Dep't of Corr.*, 976 F.3d 1087, 1096 (10th Cir. 2020). But there is a limit as to how far that can be extended when the defendant is an individual official who is being charged with the conduct of others. At some point, the Sheriff's non-entity status as no more than an instrumentality of the State, has to matter. *Cf. Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (holding "the Federal Bureau of Prisons does not fit the definition of 'programs or activities' governed by" the Rehabilitation Act). In the absence of a vicarious liability claim, therefore, the Sheriff should be dismissed.

The second issue (assuming the availability of vicarious liability) is whether the allegations against the Detention Facility staff rise to the level of intentional discrimination sufficient to satisfy *Twombly* and *Iqbal*. The Magistrate Judge held that they did because the complaint adequately alleges deliberate indifference. In support, the Magistrate Judge relied upon *Havens v. Colo. Dep't of Corrections*, 897 F. 3d 1250 (10th Cir. 2018), and in turn, *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999), which recognizes deliberate indifference as a means of

proving intentional discrimination. But *Powers* was an ADA case. And *Havens* did not address the statutory language issue raised in Objection 1 regarding the inapplicability of ADA standards to this non-employment case.

But assuming that despite this argument, *Havens* governs at present, it still does not follow that Ms. Mullen adequately alleged intentional discrimination by the Sheriff's deputies through a failure to accommodate. Not all failures to accommodate rise to the level of intentional discrimination. *See*, *e.g.*, *Lee v. District of Columbia*, 920 F. Supp. 2d 127, 132-33 (D.D.C. 2013) (distinguishing between four forms of discrimination under the ADA: intentional discrimination, disparate impact, hostile work environment, and failure to accommodate). To the contrary, as indicated by the Supreme Court in *Southeastern Community College v. Davis*, the Rehabilitation Act ordinarily does not require affirmative action from federal funding recipients. 442 U.S. 397, 410-11 (1979) (Section 504 allows for lawful refusals to extend affirmative action); *Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("[T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit *may* have to be made.") (emphasis added).

Under Title II of the ADA, Ms. Mullen would have to show [1] that she was "excluded from participation in or denied the benefits of . . . services, programs, or activities, or was otherwise discriminated against by the public entity; and [2] that such exclusion, denial of benefits, or discrimination was by reason of [her] disability." *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999). Knowledge of a disability is not enough to establish deliberate indifference, nor is inefficient communication. *See Friedson v. Shoar*, 2021 U.S. App. LEXIS 33081, *11 (11th Cir. Nov. 8, 2021) (to satisfy deliberate indifference standard, it is not enough to show a deputy had

knowledge of the plaintiff's deafness or that there had been a miscommunication, but rather that the deputy knew they would be unable to communicate effectively going forward.").

Here, based on Ms. Mullen's own allegations (which are to be taken as true), the Sheriff's deputies repeatedly made attempts to accommodate her to at least some limited success during the short period of her overnight incarceration before her transfer to the courthouse where an interpreter was provided. Sheriff's deputies attempted to communicate with her via fingerspelling and writing. (FAC ¶¶ 133-34.) In addition, they provided her a video that effectively explained the prison intake process, as well as access to video phone. (FAC ¶¶ 133-34.) As for her medical treatment, the Wellpath employees repeatedly made efforts at accommodation−with some success−through fingerspelling and writing. (FAC ¶¶ 139-141.)

Ms. Mullen challenges the effectiveness of those efforts in that 16-hour window. But that does not change the consequence of the allegations that the deputies made efforts at accommodation. Those efforts take any alleged inadequacies out of the category of intentional discrimination. *See Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012) (Deliberate indifference is an "exacting standard" that "plainly requires more than gross negligence.") (quotation omitted); *Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009) (deliberate indifference requires, *inter alia*, a failure to act); *McCulley v. Univ. of Kan. Sch. of Med.*, 591 F. App'x 648, 651 (10th Cir. 2014) (unpublished). That is especially the case where Ms. Mullen has not made any allegation as to how these alleged failures deprived her of "the benefits of" or "participation in" the programs or services of the Detention Facility or how she was otherwise treated differently than other inmates. *See Traynor v. Turnage*, 485 U.S. 535, 548 (1988) (Section 504 guarantees only "evenhanded treatment"); *Cropp v. Larimer County*, 941

13

F.3d 1237, *18 (10th Cir. 2019) (unpublished) (holding "the County's mere failure to provide [plaintiff] with the precise auxiliary aid he requested" does not "necessarily amount[] to discrimination—let alone intentional discrimination via deliberate indifference" and collecting cases); *Makeen v. Colo.*, No. 21-cv-02398-RM-NYW, 2016 U.S. Dist. LEXIS 186118, *23-24 (D. Colo. Sept. 16, 2016) (dismissing complaint where alleged deficiencies in notetaking at court hearing were not sufficient to allege plaintiff "was excluded from participation or denied the benefit of access to the courts").

## CONCLUSION

Incarceration is different than employment. The Rehabilitation Act was not meant to apply to incarceration in the same way as the ADA does to employment. Generalized statements in cases that do squarely address the relevant statutory language or relevant Supreme Court case law cannot and should not override controlling authority. The Rehabilitation Act does not afford Ms. Mullen the relief she seeks for the conduct she alleges against the Adams County Defendants as a matter of law. Because the Rehabilitation Act does not countenance the kinds of legal claims Ms. Mullen advances, the Court should dismiss her complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

DATED: May 12, 2022

Respectfully submitted,

*s/Michael A. Sink*
Michael A. Sink
Assistant County Attorney
Adams County Attorney's Office
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone:  (720) 523-6116
Fax:  (720) 523-6114
msink@adcogov.org
*Counsel  for Adams County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Michael A. Sink*
Michael A. Sink
Assistant County Attorney
Adams County Attorney's Office
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone:  (720) 523-6116
Fax:  (720) 523-6114
msink@adcogov.org
*Counsel  for Adams County Defendants*