IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-02398-CNS-MDB

CYNTHIA MULLEN,

    Plaintiff,

v.

BOARD OF COMMISSIONERS OF THE COUNTY OF ADAMS, COLORADO,
RICHARD A. REIGENBORN, in his official capacity as the Sheriff of the County of Adams, and
WELLPATH LLC,

    Defendants.

## ORDER

    This matter comes before the Court on Defendants Board of County Commissioners for Adams County, Colorado (the "Board") and Sheriff Richard A. Reigenborn's (collectively the "Adams County Defendants'") Motion to Dismiss (ECF No. 22), Defendant Wellpath LLC's ("Wellpath's") Motion to Dismiss (ECF No. 23), the United States Magistrate Judge's Recommendation (ECF No. 49) regarding the above, and the Adams County Defendants' Objections thereto (ECF No. 51). For the reasons set forth below, the Adams County Defendants' Objections are OVERRULED, and the Magistrate Judge's Recommendation is ADOPTED and AFFIRMED. Accordingly, the Adams County Defendants' Motion to Dismiss (ECF No. 22) is

GRANTED in part and DENIED in part, and Wellpath's Motion to Dismiss (ECF No. 23) is GRANTED.[1]

## I. BACKGROUND

The allegations in Plaintiff Cynthia Mullen's First Amended Complaint are summarized in the Magistrate Judge's Recommendation (*See* ECF No. 49).[2] After summarizing the First Amended Complaint's allegations, the Magistrate Judge discussed the three grounds on which the Adams County Defendants sought dismissal: (1) that the Board was not a proper party to Ms. Mullen's lawsuit; (2) that the Rehabilitation Act does not provide a cause of action in non-employment cases based on a failure-to-accommodate theory of liability; and (3) that the Rehabilitation Act does not impose liability under a theory of vicarious liability (*See id.* at 8).

The Magistrate Judge recommended granting the Adams County Defendants' Motion to Dismiss to the extent that it sought dismissal of Ms. Mullen's claim against the Board,[3] but recommended denying the Adams County Defendants' Motion as to Ms. Mullen's Rehabilitation Act claim against Defendant Reigenborn in his official capacity (*Id.* at 16, 25). In recommending that the Adams County Defendants' Motion to Dismiss Ms. Mullen's claim against Defendant Reigenborn should be denied, the Magistrate Judge "assume[d] . . . that [Ms. Mullen] may assert a failure-to-accommodate" theory under the Rehabilitation Act, and concluded that Ms. Mullen had plausibly alleged intentional discrimination by staff at the Detention Facility and that the Rehabilitation Act imposes liability under a theory of vicarious liability (*Id.* at 18, 22, 23-25). The

---

[1] The Magistrate Judge recommended granting Wellpath's Motion to Dismiss (ECF No. 49 at 29). Plaintiff Cynthia Mullen did not file an objection to this portion of the Magistrate Judge's Recommendation.

[2] The Court incorporates the Magistrate Judge's summary of the First Amended Complaint's allegations into its Order.

[3] Ms. Mullen did not file an objection to the Magistrate Judge's recommendation that the Court should dismiss her claim against the Board.

Adams County Defendants timely filed their Objections to the Magistrate Judge's Recommendation (ECF No. 51). Ms. Mullen did not respond to the Adams County Defendants' Objections, nor did she file an objection to the Magistrate Judge's recommendation that the Court should grant Wellpath's Motion to Dismiss.

## II. STANDARD OF REVIEW AND LEGAL STANDARD

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059. In conducting its review, "[t]he district judge may accept, reject, or modify the [recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from

3

conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

## III. ANALYSIS

The Court has reviewed the First Amended Complaint, the Magistrate Judge's Recommendation, the Adams County Defendants' Objections, and the relevant legal authority. The Court addresses the arguments in the Adams County Defendants' Objections in turn.

### A. The Rehabilitation Act and Ms. Mullen's Failure-to-Accommodate Claim

The Adams County Defendants argue that the Magistrate Judge erred in concluding that Ms. Mullen could assert a failure-to-accommodate claim against Defendant Reigenborn under the Rehabilitation Act (*See* ECF No. 2-6). The Magistrate Judge erred, the Adams County Defendants contend, because she did not properly analyze the Rehabilitation Act's statutory language, which precludes Ms. Mullen's ability to assert a claim under the Rehabilitation Act for an alleged failure to accommodate (*See id.*). The Court disagrees with the Adams County Defendants.

In concluding that Ms. Mullen could assert a failure-to-accommodate claim under the Rehabilitation Act, the Magistrate Judge stated that, as a general matter, courts construe the relevant Rehabilitation Act provisions and provisions from the Americans with Disabilities Act (the "ADA") similarly (ECF No. 49 at 17). Under the ADA, a plaintiff may assert a claim based

4

on alleged failure to accommodate. *See, e.g.*, *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). Therefore, the Magistrate Judge reasoned, Ms. Mullen "may assert a failure-to-accommodate theory of liability under the Rehabilitation Act" (ECF No. 49 at 18).

According to the Adams County Defendants, the Rehabilitation Act's statutory language establishes that a plaintiff cannot assert a failure-to-accommodate claim in non-employment cases such as Ms. Mullen's (ECF No. 51 at 3-4). The Adams County Defendants contend that in non-employment cases brought under the Rehabilitation Act, courts must look to Title VI of the Civil Rights Act of 1964—rather than the ADA—which does not permit a plaintiff to assert claims for an alleged failure to accommodate (*Id.* at 4). The Court disagrees. To be sure, some cases tend to support the Adam County Defendants' argument. *See Hale v. Johnson*, 845 F.3d 224, 228 (6th Cir. 2016) ("[In] § 794a(a)(2), Congress managed to express its intent to make all of Title VI applicable to that subsection by broadly delineating the availability of [Title VI's] remedies, procedures, and rights . . ." (quotations omitted) (emphasis removed)); *Mitchell v. Sullivan Place Apartments*, No. 4:19-CV-00430-SNLJ, 2020 WL 2747824, at *4 (E.D. Mo. May 27, 2020) ("Title VI only prohibits intentional discrimination." (citation omitted)). But numerous courts have determined that the Rehabilitation Act does not bar failure-to-accommodate claims in non-employment cases. *See, e.g., Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012) ("The relief available . . . under [the ADA and Rehabilitation Act] is coextensive . . . . Refusing to make reasonable accommodations is tantamount to denying access [under the Rehabilitation Act]." (quotations omitted)); *Fulton v. Goord*, 591 F.3d 37, 42 (2d Cir. 2009) (citing the "breadth" of the Rehabilitation Act and ADA which do not impose certain standing limitations and that claim for

"деni[al] [of] a reasonable accommodation" under the Rehabilitation Act was "plainly an injury in fact" (citing 29 U.S.C, § 794(a), § 794(a)(2), and 42 U.S.C. § 12133)).

The Court finds the reasoning of these cases persuasive. A contrary conclusion would make little sense, given the relationships between Title II of the ADA, the Rehabilitation Act, and Title VI. Although Title VI itself does not provide for failure-to-accommodate claims, *see Smith v. Harris Cnty., Texas*, 956 F.3d 311, 317 (5th Cir. 2020), Title II "incorporates the remedies, procedures, and rights" of § 794a of the Rehabilitation Act, *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 319 (6th Cir. 2012) (quotations and alteration omitted). *See also* 42 U.S.C. § 12133. This means that a plaintiff's claim under Title II of the ADA "incorporates the remedies, procedures, and rights of 29 U.S.C. § 794a(a)(2), which incorporates the remedies, procedures, and rights of Title VI." *Johnson-Goeman v. Michigan Dep't of Com.*, No. 5:93-CV-119, 1995 WL 313707, at *5 (W.D. Mich. Jan. 18, 1995). And Title II of the ADA *does* permit failure-to-accommodate claims in the non-employment context. *Brooks v. Colorado Dep't of Corr.*, 12 F.4th 1160, 1167 (10th Cir. 2021) (setting forth elements "[t]o establish a Title II violation under a reasonable accommodation theory" in case where correctional department failed to provide prison inmate with reasonable accommodation); *see also id.* ("[Title II of the ADA] places an affirmative obligation on public entities to reasonably accommodate qualified individuals with disabilities to allow them to participate in its programs and services." (citing 28 C.F.R. § 35.130)).

Therefore, it is nonsensical to conclude that § 794a(a)(2)'s reference to Title VI's remedies and procedures precludes failure-to-accommodate claims under the Rehabilitation Act when Title II of the ADA—which permits failure-to-accommodate claims—also incorporates § 794a(a)(2) of the Rehabilitation Act. *See Johnson-Goeman*, 1995 WL 313707, at *5. "[T]he Rehabilitation Act

6

incorporates, for Section 504 violations, the rights and remedies of Title VI." *Smith*, 956 F.3d at 316 (citing § 794a(a)(2)); *see also Jones v. City of Detroit, Michigan*, 20 F.4th 1117, 1119 (6th Cir. 2021), *cert. denied*, No. 21-1292, 2022 WL 4651340 (U.S. Oct. 3, 2022) ("[Title II] says that the 'remedies, procedures, and rights' under section 505 apply . . . . [and § 505] says that the remedies, procedures, and rights [of Title VI] . . . [are] available for violations of the Rehabilitation Act." (quotations omitted)). And nonetheless "[a] failure to provide reasonable accommodation can constitute discrimination under section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002); *see also Havens v. Colorado Dep't of Corr.*, 897 F.3d 1250, 1263 (10th Cir. 2018) (setting forth plaintiff's burden to show a detention center that formerly incarcerated him violated section 504 "by failing to provide meaningful access to the program and service, such that the need for a remedial interactive process aimed at finding a reasonable accommodation was triggered" (quotations omitted)).

For these reasons, the statutory schemes of Title II of the ADA, the Rehabilitation Act, and Title VI support the Magistrate Judge's conclusion that Ms. Mullen may assert a Rehabilitation Act claim against Defendant Reigenborn in his official capacity based on the alleged failure to accommodate her disability. This is consistent with the "duty to accommodate" that "generally" exists in the Rehabilitation Act. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 747 (7th Cir. 2006) (citing *Alexander v. Choate*, 469 U.S. 287 (1985)). *See also Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 150–51 (2d Cir. 1999) ("[T]he ADA and the Rehabilitation Act prohibit all disability-based discrimination by a public entity or recipient of federal financial assistance, and these statutes require reasonable accommodations that are necessary for an equal opportunity to receive benefits from, or participate in, programs run by such

entities."). Accordingly, the Magistrate Judge did not err in assuming that a failure-to-accommodate theory of liability may be asserted under the Rehabilitation Act (ECF No. 49 at 18).

### B. Defendant Reigenborn and Vicarious Liability

The Adams County Defendants argue the Magistrate Judge erred in concluding that Ms. Mullen could pursue a Rehabilitation Act claim against Defendant Reigenborn in his official capacity based on a theory of vicarious liability (*See* ECF No. 6-9). According to the Adams County Defendants, the Supreme Court's decision in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), eliminates the possibility that Defendant Reigenborn in his official capacity may be held vicariously liable under the Rehabilitation Act (*Id.* at 7). The Court disagrees.

In *Gebser*, the Supreme Court held that Title IX of the Education Amendments of 1972 did not permit recovery against a school district for a teacher's sexual assault "based on principles of *respondeat superior* or constructive notice." *Gebser*, 524 U.S. at 285 (citation omitted). The Magistrate Judge rejected the argument that *Gebser* foreclosed the imposition of vicarious liability based on the weight of authority from other federal appellate courts (*See* ECF No. 49 at 23). According to the Magistrate Judge, this weight of authority concluded that "vicarious liability is permitted" against Defendant Reigenborn under the Rehabilitation Act (ECF No. 49 at 23). The Adams County Defendants argue the cases on which the Magistrate Judge relied either predate *Gebser* or are inconsistent with it, and therefore the Magistrate Judge erred in basing her conclusion on those cases.

The Adams County Defendants cite *Jones v. City of Detroit, Michigan*, 20 F.4th 1117 (6th Cir. 2021), in support of their contention that the Rehabilitation Act does not permit claims based on a theory of vicarious liability (ECF No. 51 at 7 n.2). *Jones* applied *Gebser* and concluded that

8

"[b]ecause Title II of the ADA and the Rehabilitation Act import Title VI's remedial regime" and Title VI "does not allow vicarious liability [then] neither do" the Rehabilitation Act and Title II of the ADA. *Jones*, 20 F.4th at 1121 (6th Cir. 2021). *See also Ingram v. Kubik*, 30 F.4th 1241, 1258 (11th Cir.), *cert. dismissed*, 142 S. Ct. 2855 (2022) (concluding that "vicarious liability is unavailable under Title II") (citing *Jones*, 20 F.4th at 1121). The Adams County Defendants essentially urge the Court to apply *Gebser* and *Jones*' reasoning and conclude that, contrary to the Magistrate Judge's conclusion, Ms. Mullen cannot pursue her Rehabilitation Act claim against Defendant Reigenborn in his official capacity under a vicarious liability theory (*See* ECF No. 51 at 6-9).

*Jones* and the Adams County Defendants fail to persuade that the Magistrate Judge's conclusion that Defendant Reigenborn in his official capacity may be vicariously liable under the Rehabilitation Act was erroneous (*See* ECF No. 49 at 23-25). As the Magistrate Judge observed, other courts have concluded that a party may be vicariously liable under the Rehabilitation Act (ECF No. 49 at 23 (collecting cases)). *See also T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417 (5th Cir. 2021) ("[A] public entity may be held vicariously liable for the acts of its employees under either [the ADA or § 504]"); *A.K.B. By & Through Silva v. Indep. Sch. Dist.* 194, No. 19-CV-2421 (SRN/KMM), 2020 WL 1470971, at *9 (D. Minn. Mar. 26, 2020) (citing four federal appellate court decisions and concluding that a public entity "can be held vicariously liable" under Title II of the ADA and § 504); *A.V. through Hanson v. Douglas Cnty. Sch. Dist. RE-1*, 586 F. Supp. 3d 1053, 1067 (D. Colo. 2022) (denying motion to dismiss on the grounds that "Title II of the ADA provides for *respondeat superior* liability"). The Court finds these cases persuasive. As the Ninth Circuit held, a public entity may be held vicariously liable under Title II of the ADA or

9

§ 504 because "the historical justification for exempting municipalities from *respondeat superior* liability does not apply to the Rehabilitation Act" and the *respondeat superior* doctrine is "consistent with the policy of [§ 504], which is to eliminate discrimination against the handicapped." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (quotation omitted). Moreover, vicarious liability is not a "remed[y], procedure[], [or] right." § 794a(a)(2). It is a theory of liability based on agency principles. *See, e.g.*, Restatement (Third) Of Agency § 2.04 cmt. b (2006). A *theory* of liability does not affect the Rehabilitation Act's "remedies, procedures, and rights" in a manner that forecloses an entity's vicarious liability under the Act. § 794a(a)(2); *see also Jones*, 20 F.4th at 1126 (Moore, J., dissenting). Essentially, the theory of vicarious liability is one theory available to pursue the Rehabilitation Act's remedies, and a vicarious liability theory does not "create any substantive rights or delineate any procedures." *Id.*

The availability of Rehabilitation Act claims based on a vicarious liability theory is wholly consistent with courts' construction of the Act and the ADA, which allow for failure-to-accommodate claims despite the Rehabilitation Act's incorporation of Title VI's "remedies, procedures, and rights." §§ 794a(a)(2); *see also Jaros*, 684 F.3d at 671 ("The relief available . . . under these [statutory] provisions is coextensive."); *cf. Jones v. City of Detroit*, No. 17-11744, 2019 WL 2355377, at *5 (E.D. Mich. June 4, 2019), *aff'd sub nom. Jones v. City of Detroit, Michigan*, 20 F.4th 1117 (6th Cir. 2021) ("To determine whether a particular remedy is available under the ADA, the Court looks at its remedial scheme, which looks to the Rehabilitation Act, which looks to Title VI . . . ."). It makes little sense to conclude that a plaintiff cannot pursue a Rehabilitation Act claim premised on an entity's vicarious liability when the Act permits failure-to-accommodate claims. *Cf. Smith*, 956 F.3d at 317. For these reasons, the Magistrate Judge did

not err in recommending Ms. Mullen's claim against Defendant Reigenborn based on his vicarious liability survives dismissal (*See* ECF No. 49 at 25).

### C. Defendant Reigenborn, the Detention Facility Staff, and Intentional Discrimination

The Adams County Defendants contend that the Magistrate Judge erred in concluding that Defendant Reigenborn may be liable for the Detention Facility staff's intentional discrimination (*See* ECF No. 51 at 9-14). In support of this contention, the Adams County Defendants make three arguments. First, that a vicarious liability theory is "unavailable" for Rehabilitation Act claims (*Id.* at 9). Second, that Defendant Reigenborn is "not a legal entity" under the Rehabilitation Act, and therefore Ms. Mullen may only bring "direct claims" against him (*Id.* at 10). Third, that Ms. Mullen's allegations regarding the Detention Facility staff's alleged intentional discrimination are not "sufficient to satisfy *Twombly* and *Iqbal*" (*Id.* at 11). The Court considers, and rejects, the Adams County Defendants' arguments in turn.

First, as discussed above, Ms. Mullen may bring a Rehabilitation Act claim against Defendant Reigenborn in his official capacity under a vicarious liability theory. Second, Ms. Mullen has sued Defendant Reigenborn in his official capacity (*See* ECF No. 16). Because Defendant Reigenborn is sued in his official capacity, he is a legal entity suable under the Rehabilitation Act. *See, e.g.*, *Hicks v. City & Cnty. of Denver*, No. 17-CV-03001-MSK-KLM, 2019 WL 4306196, at *9 (D. Colo. Sept. 11, 2019) ("[A]n official capacity claim is a claim against the governmental entity employing the official." (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State." (citation omitted)).

11

Third, the Court agrees with the Magistrate Judge that Ms. Mullen has plausibly alleged intentional discrimination by the Detention Facility staff (*See* ECF No. 49 at 22). For instance—as the Magistrate Judge summarized—Ms. Mullen alleged that the Detention Facility staff knew she was deaf, could not effectively communicate in writing and required an ASL interpreter, yet ignored her requests for an effective interpreter as well as an accessible bed (*Id.* at 22). *See also* ECF No. 16 at 12-13, 15 ¶¶ 124-26, 129, 133-36, 138, 151-56. Thus, the First Amended Complaint's factual content plausibly alleges that the Detention Facility staff acted more than negligently, knew their failure to provide Ms. Mullen with reasonable accommodations was "substantively likely" to violate her rights, and acted despite that likelihood. *See Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009) (quotations omitted).

When the "substantial likelihood of harm is obvious," courts may infer that a defendant had actual knowledge of that substantial risk of harm. *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014); *see also Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007) ("[T]he entity will know of the individual's need for an accommodation because it is obvious." (quotation omitted)). Accepting as true the First Amended Complaint's allegations and interpreting them in the light most favorable to Ms. Mullen, *see Mayfield*, 826 F.3d at 1255, the need for the Detention Facility staff to provide Ms. Mullen with an effective interpreter and an accessible bed was obvious. Ms. Mullen's native language is ASL, and she cannot understand verbal communication by reading lips or sentences written in English (ECF No. 16 at 4-5 ¶¶ 24-30). For these reasons, she requires an effective ASL interpreter (*Id.* at 5 ¶ 31). Although a female officer at the Detention Facility "attempted to communicate with Ms. Mullen by fingerspelling words," this was inadequate for Ms. Mullen to communicate with

12

the Detention Facility staff—and after the officer "gave up" trying to communicate with Ms. Mullen, the Detention Facility staff did not provide an ASL interpreter (*Id.* at 13 ¶¶ 133-38).

Ms. Mullen, an amputee with a prosthetic leg, also requested a proper bed to accommodate her disabilities, but the Detention Facility staff refused to communicate with Ms. Mullen after bringing her an inadequate cot (*Id.* at 15 ¶¶ 151-155). These allegations demonstrate that Ms. Mullen had an obvious need for reasonable accommodations and faced a substantial likelihood of harm due to the Detention Facility staff's failure to accommodate. *See McCullum*, 768 F.3d at 1147; *Robertson*, 500 F.3d at 1197. Indeed, Ms. Mullen alleges that she suffered physical pain because—as a result of the Detention Facility staff's failure to accommodate—she was forced to sit upright in her wheelchair until 4:00 a.m. (ECF No. 16 at ¶¶ 154-58). Accordingly, the Magistrate Judge did not err in concluding Ms. Mullen plausibly alleged the Detention Facility staff were deliberately indifferent to her needs and that the Detention Facility staff intentionally discriminated against her (*See* ECF No. 49 at 19, 21-22). *See also Barber*, 562 F.3d at 1228-29.

## IV. CONCLUSION

Consistent with the above analysis, the Court OVERRULES the Adams County Defendants' Objections to the Magistrate Judge's Recommendation (ECF No. 51). The Magistrate Judge's Recommendation (ECF No. 49) is AFFIRMED AND ADOPTED. Accordingly, the Adams County Defendants' Motion to Dismiss (ECF No. 22) is GRANTED in part and DENIED in part. Ms. Mullen's first claim against the Board of County Commissioners for Adams County, Colorado is dismissed. Defendant Wellpath LLC's Motion to Dismiss (ECF No. 23) is GRANTED. In accordance with the order of the Magistrate Judge (ECF No. 57), the parties are

directed to file a joint status report within 10 days of this Order. It is appropriate for the parties to conduct discovery now that the Motions to Dismiss have been resolved.[4]

DATED this 29th day of November 2022.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

[4] A ruling on the Adams County Defendants' Motion to Strike (ECF No. 50) is forthcoming.