**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:21-cv-02398

CYNTHIA MULLEN

             Plaintiff

v.

GENE CLAPS, in his official capacity as the Sheriff of the County of Adams,

             Defendants.

---

**RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff, Cynthia Mullen, by and through her undersigned counsel, submits this Response to Defendant's Motion for Summary Judgment and further states as follows:

<u>INTRODUCTION</u>

Defendant's Motion for Summary Judgment ("MSJ") ignores the Court's prior Order on the Motion to Dismiss ("MTD"). Defendant's arguments also ignore common sense and the factual record that was elicited through Defendant's own employees. For the reasons set forth herein, this court should reject Defendant's arguments in its MSJ and set this case for trial in an expedited manner.

<u>RESPONSE TO THE STATEMENT OF MATERIAL FACTS</u>

1.      Admit.

2.      Admit.

3.      Admit.

4.      Admit.

5.      Admit.

6.      Admit.

7.      Admit.

8.      Admit.

9.      Admit.

10.      Admit.

11.      Admit.

12.      Admit.

13.      Admit.

14.      Admit.

15.      Admit, however, Plaintiff denies that the approved list of interpreters were certified interpreters. *See* **Ex. 1**, 30(b)(6) Dep. at 70:4-15, 203:13-204:11, 209:3-5, 230:5-10. Moreover, the approved list of sign language interpreters could have included numerous other interpreting agencies. *See* **Ex. 1**, 30(b)(6) Dep. at 213:5-8, 217:6-15, 218:11-17, 221:5-222:4, 224:14-225:15.

16.      Admit.

17.      Admit; however, Plaintiff notes that Deputy Runge was not working on August 24, 2020, or on August 25, 2020. *See* **Ex. 1**, 30(b)(6) Dep. at 125:9-126:16, 200:13-19.

18.      Admit.

19.      Admit; however, disputed to the extent this fact insinuates that Ms. Mullen used the SVRS device for thirty (30) minutes or that Ms. Mullen was aware that deputies had the discretion to allow for more than one thirty (30) minute period of use per day. *See* Ex. F to MSJ at 1 [ECF 84-6]; *see also* **Ex. 1**, 30(b)(6) Dep. at 184:24-185:6; *see also* **Ex. 2**, Mullen Dep. at 64:24-65:5.

20.    Admit.

21.    Admit.

22.    Admit.

23.    Admit.

24.    Admit; however, disputed to the extent this fact indicates Ms. Mullen can effectively communicate via lip reading. *See Mullen v. S. Denver Rehab.*, LLC, No. 18-cv-01552-MEH, 2020 WL 2557501, *2 ¶ 1 (D. Colo. May 20, 2020); *see also* Ex. I to MSJ at 38:6-7 [ECF 84-9].

25.    Admit.

26.    Admit; however, disputed that to the extent this fact indicates that Ms. Mullen can effectively communicate through written English.

27.    Admit; however, disputed that to the extent this fact indicates that Ms. Mullen can effectively communicate through written English.

28.    Admit; however, disputed that to the extent this fact indicates that Ms. Mullen can effectively communicate through written English.

29.    Disputed. Ms. Mullen did not testify that she can read and sign agreements without an interpreter. She testified that she could sign a simple boilerplate rental agreement without the aid of an interpreter. *See* Ex. H to MSJ, Mullen Dep. at 20:13-16 [ECF 84-8]. Ms. Mullen explained that, for more complex agreements, like purchasing a house, she had an interpreter present. *See* Ex. H to MSJ, Mullen Dep. at 19:10-20 [ECF 84-8].

30.    Undisputed.

31.    Undisputed.

32.    Admit; however, disputed to the extent this fact indicates Ms. Mullen can

effectively communicate via reading written English. *See* **Ex. 3**, Kraefft Dep. at 109:16-21, 114:11-115:2, 115:10-25; *see also* **Ex. 4,** Roger Williams Report at 5-7.

33.     Admit; however, disputed to the extent this fact indicates Ms. Mullen can effectively communicate via reading written English. *Id.*

34.     Admit; however, disputed to the extent this fact indicates Ms. Mullen can effectively communicate via reading written English. *Id*

35.     Admit; however, disputed this is a material fact.

36.     Admit.

37.     Admit.

38.     Admit; however, disputed that to the extent this fact indicates that Ms. Mullen can effectively communicate through written English.

39.     Admit.

40.     Admit.

41.     Admit.

42.     Admit.

43.     Admit.

44.     Disputed. Ms. Mullen testified that there was no signing in the video, that she could not understand the video, and there was no interpreter. *See* **Ex. 2**, Mullen Dep. at 57:18-58:11.

45.     Admit that Deputy Stein utilized written notes to attempt to communicate with Ms. Mullen; however, disputed to the extent this fact insinuates Deputy Stein effectively communicated with Ms. Mullen using writing.

46.     Admit.

47.     Admit.

48.     Admit.

49.     Admit.

50.     Admit that Deputy Stein utilized written notes to attempt to communicate with Ms. Mullen; however, disputed to the extent this fact insinuates Deputy Stein effectively communicated with Ms. Mullen using writing.

51.     Admit; however, disputed to the extent this fact insinuates Ms. Mullen fully understood what she was completing or why she was completing it.

52.     Admit.

53.     Admit.

54.     Admit to the fact that Deputy Kraefft utilized written notes to attempt to communicate with Ms. Mullen; however, disputed to the extent this fact insinuates Mr. Stein effectively communicated with Ms. Mullen using writing. Further disputed to the extent this is the statement that the notes utilized by Deputy Kraefft were simply "not kept" as they were thrown away in direct violation to Defendant's policy. *See* **Ex. 3**, Kraefft Dep. at 57:19-58:11; *see also* **Ex. 1**, 30(b)(6) Dep. at 131:11-132:8.

55.     Deny. Ms. Mullen testified that she was not able to access or utilize a cot and had to wait two (2) hours to use the handicap restroom as she could not access the bathroom in the holding cell. *See* **Ex. 2**, Mullen Dep. at 61:25-62:8, 62:9-63:20.

56.     Admit.

57.     Admit; however, disputed to the extent that this is a material fact.

58.     Admit; however, disputed to the extent this fact insinuates Ms. Mullen communicated effectively using written English.

59.     Admit; however, disputed to the extent that this is a material fact.

60.     Admit; however, disputed to the extent that this is a material fact.

61.     Admit; however, disputed to the extent that this is a material fact.

62.     Admit; however, disputed to the extent that this is a material fact.

63.     Admit; however, disputed to the extent that this is a material fact.

64.     Admit.

65.     Undisputed.

66.     Admit.

67.     Admit.

## ADDITIONAL MATERIAL FACTS

68.     Deputy Kraefft admitted she was unable to effectively communicate with Ms. Mullen through writing notes. *See* **Ex. 3**, Kraefft Dep. at 109:16-21, 114:11-115:2, 115:10-25.

69.     Deputy Krafft admitted that, because there was no ASL interpreter, she was unable to effectively communicate with Ms. Mullen. *Id*.

70.     At the time of Ms. Mullen's incarceration, Defendant was aware of multiple agencies and companies near Defendant's detention facility that could provide ASL interpreting services 24 hours a day, 7 days a week. *See* **Ex. 1**, 30(b)(6) Dep. at 213:5-8, 217:6-15, 218:11-17, 221:5-222:4, 224:14-225:15.

71.     In 2020, at the time of Ms. Mullen's stay at Defendant's facility, Defendant only had one individual, Deputy Runge, it could rely on to provide ASL interpreting services for deaf inmates after hours. *See* **Ex. 1**, 30 (b)(6) Dep. at 197:15-198:8.

72.     Defendant admitted that Deputy Runge did not want to come in to provide ASL interpretation services to Ms. Mullen when she was at Defendant's facility because he was off

that day. *See* **Ex. 1**, 30 (b)(6) Dep. at 200:15-19.

73.     Defendant's policies dictate, without exceptions, that if an ASL interpreter is requested, then one must be provided. *See* **Ex. 1**, 30(b)(6) Dep. at 61:22-62:4*; see also* Ex. D to MSJ [ECF 84-4].

74.     Defendant is aware that Ms. Mullen requires an ASL interpreter to communicate. *See* **Ex. 1**, 30(b)(6) Dep. at 79:5-6.

75.     Defendant admitted that if an ASL interpreter is requested one should be provided, per policy, for the booking process. *See* **Ex. 1**, 30(b)(6) Dep. at 124:18-22.

76.     Defendant did not provide an ASL interpreter to Ms. Mullen at any point during her stay at Defendant's detention facility. *See* **Ex. 3**, Kraefft Dep. at 52:15-21, 116:8-20; *see also* **Ex. 1**, 30(b)(6) Dep. at 77:10-13, 125:9-127:3; *see also* **Ex. 2**, Mullen Dep. at 57:23-25, 100:2-7; *see also* Ex. H to MSJ, Mullen Dep. at 104:22-25 [ECF 84-8].

77.     Defendant admitted that it failed to provide Ms. Mullen with an ASL interpreter while at Defendant's detention facility and this failure violated Defendant's own policy. *See* **Ex. 1**, 30(b)(6) Dep. at 77:10-13.

78.     Defendant admitted that Deputy Runge, the only individual who could have provided ASL interpretation services for the Defendant after hours, and to Ms. Mullen, is not a qualified interpreter under Defendant's policies. *See* **Ex. 1**, 30(b)(6) Dep. at 70:20-71:5.

## <u>ARGUMENT</u>

Initially, the Court should exercise its judicial discretion and reject Defendant's arguments that it previously raised in its MTD, and which were previously decided. *See Entek GRB, LLC v. Stull ranches, LLC*, 840 F.3d 1239, 1241 (barring a party from relitigating "issues either expressly or implicitly resolved in prior proceedings in the same court."); *see also Am.*

*Nat'l Prop. & Cas. Co. v. Sam*, No. 16-CV-301-ABJ, 2019 WL 11527928, at *7 (D. Wyo. Sept. 5, 2019) (holding "[t]he law of the case doctrine prohibits the re-litigation of issues either already decided by the *trial court* or a court of appeals) (citations omitted) (emphasis added); *see also Martinez v. Roscoe*, 100 F.3d 121, 123 (10th Cir. 1996) (holding that a district court's previous preliminary injunction was binding when the preliminary injunction as challenged several years later); *see also Obeslo v. Great-west Cap. Mgmt., LLC,* No. 16-CV-00230-CMA-MJW, 2018 WL 10932793, at *1 (D. Colo. Jan. 30, 2018).

In its MSJ, Defendant argues that the standards under Title VI apply and that there is no vicarious liability under the Rehabilitation Act. *See* MSJ at 10-11 (Title VI), 16-19 (vicarious liability). However, in its Order on the MTD the Court explicitly rejected Defendant's argument that Title VI applies:

> [I]t is nonsensical to conclude that § 794a(a)(2)'s reference to title VI's remedies and procedures precludes failure-to-accommodate claims under the Rehabilitation Act when Title II of the ADA-which permits failure-to-accommodate claims-also incorporates § 794a(a)(2) of the Rehabilitation Act.

Order MTD at 6 [ECF 58]. Ignoring the foregoing, Defendant relies on four (4) cases that were not referenced by Defendant, Plaintiff, and/or the Court at the MTD stage with respect to the foregoing. Defendant first cites *Flynn v. Distinctive Home Care, Inc*., 812 F.3d 422, 428 (5th Cir. 2016) to support its arguments that the rehab act does not completely incorporate the terms of the ADA. *See* MSJ at n. 3. However, the Fifth Circuits analysis is inapplicable to Ms. Mullen's claims as her claims do not relate to employment matters or Title I of the ADA like in *Flynn*. Next, Defendant relies on *K.M. v. Tustin Unified Sch. Dist*., 725 F.3d 1088, 1099 (9th Cir. 2013). Defendant's reliance on *K.M.* is also misguided as the Ninth Circuit distinguished the Rehab Act from ADA Title II as it related to the IDEA and fair and appropriate public education (FAPE). *K.M.*, 725 F.3d 1088. Specifically, the Ninth Circuit distinguished the Rehab Act and Title II of

8

the ADA because the Rehab Act had separate regulations for FAPE which were codified under a different statute. *Id* at 1099. The Ninth Circuit's ruling that the Rehab Act and Title II of the ADA, and its implementing regulations, is inapplicable to Ms. Mullen's claims as she did not bring any claims under the FAPE regulations of the Rehab Act.

Defendant also cites *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 421 (4th Cir. 2015) and argues that "non-employment cases, such as this one, the Rehabilitation Act states that Title VI provides the governing legal standards…" *see* MSJ at 11. Defendant misapplies the court's reasoning as the Fourth Circuit as the Fourth Circuit reasoned that "Title II unambiguously does not provide a vehicle for public employment discrimination claims." *See Reyazuddin* 789 F.3d at 421. Finally, Defendant cites *Hamer v. City of Trinidad*, 441 F. Supp. 3d 1155, 1171-72 (D. Colo. 2020) for the proposition that the court declined to consider DOJ regulations when evaluating a Rehab Act claim. *See* MSJ at 13. This is simply not the case in *Hamer* as the District Court of Colorado reviewed the DOJ regulations under Title II and the ADA analogously and ultimately decided that the court need not look to the regulations because the "statutory text, as well as its structure, legislative history, and broader statutory context…" made the court's review clear. *See Hamer,* Supp. 441 F. 3d at 1171-72.

Regarding vicarious liability, the Court rejected Defendant's interpretation of *Gebser*, and concluded that a party can be held vicariously liable under the Rehabilitation Act:

> [I]t makes little sense to conclude that a plaintiff cannot pursue a Rehabilitation Act claim premise don an entity's vicarious liability when the Act permits failure-to-accommodate claims.

Order MTD at 10 [ECF 58]. Again, ignoring the Court's prior Order, Defendant copies and pastes its previous arguments at the MTD stage and identifies two cases that were not referenced by Defendant, Plaintiff, and/or the Court at the MTD stage with respect to the foregoing. First,

Defendant cites to *Gradeless v. Kan. State Univ.*, 2023 U.S. Dist. LEXIS 44703, *12-14 (D. Kan. Mar. 16, 2023) for the proposition that one district court's opinion aligns with Defendant's arguments set forth in the MSJ as well as their original MTD. *See* MSJ at 19. The unreported district court opinion from the District of Kansas at the motion to dismiss stage is not binding on this Court. Moreover, this Court has already underwent its own analysis of nearly identical arguments as the court did in *Gradeless* and held that Defendant can be held vicariously liable for its actions towards Ms. Mullen. *See* Order on MTD at 8-11 [ECF 58]. Ultimately, this Court was correct in reasoning that "[t]he availability of Rehabilitation Act claims based on a vicarious liability theory is wholly consistent with courts' construction of the Act and the ADA." *See* Order on MTD at 10 [ECF 58]. Defendant has not cited any new facts that should change this Court's prior decision to comport with the court's findings in *Gradeless*.

Defendant then relies on *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1290 (10th Cir. 2017) to further support its arguments that vicarious liability is inconsistent with a deliberate indifference or intentional discrimination standard. *See* MSJ at 19. The Tenth Circuit in *Ross* was confronted with the concept of holding a public university liable for the actions of non-decision makers or "appropriate persons" under Title IX. *See Ross*, 859 F. 3d 1280. That is not the issue in front of this Court as Ms. Mullen has brought her claims under the Rehab Act and it is undisputed that the deputies at the detention facility can request interpreters for a Deaf inmate. *See* SUMF ¶ 47; *see also* Ex. D to MSJ [ECF 84-4]. The instant matter is distinguishable from *Ross* as there is no dispute that the alleged wrongdoers here had the ability to not discriminate against Ms. Mullen and provide her with an ASL interpreter. *Id*.

I.   **MULLEN WAS SUBJECT TO DISCRIMINATION UNDER THE REHABILITATION ACT.**

With respect to the liability under the Rehabilitation Act, Defendant would have this

Court undo decades of legislation related to the provisions of accommodations for deaf individuals and hold that effective communication is not necessary to provide meaningful access during incarceration. *See* MSJ at 10-13; *but see Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 857 (10th Cir. 2003) ("holding that although a deaf inmate could physically attend prison activities, he did not have meaningful access without a sign language interpreter).

Defendant's argument that the DOJ regulations have no application to this case directly contradicts established case law including the same cases law relied upon by Defendant in its MSJ. *See* MSJ at 10-13; *but see Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222 at Fn. 2 (10th Cir. 2009); *see also Cropp v. Larimer Cnty., Colorado*, 793 F. App'x 771, 776-78 (10th Cir. 2019) (applying the DOJ's regulations related to auxiliary aids and services to a Rehabilitation Act Claim). Appellate Courts throughout the country have routinely applied the Title II standards to Rehabilitation Act claims. *See also Basta v. Novant Health Inc.*, 56 F.4th 307, 316 (4th Cir. 2022) ("This court interprets the ADA and the RA in lockstep…"); *Luke v. Texas*, 46 F.4th 301, Fn. 3 (5th Cir. 2022) ("[t]he ADA and Rehabilitation Act are interpreted *in pari materia*."); *Lange v. City of Oconto*, 28 F.4th 825, 837-38 (7th Cir. 2022) ("[f]or the purpose of this appeal, [the ADA and the RA] are functionally identical.").[1] Finally, Defendant's reliance on *Hamer* is misplaced because the court simply noted it did not need to consider the DOJ regulations because the statutory text along with the legislative history was obvious. *See Hamer v. City of Trinidad*, 441 F.Supp.3d 1155, 1171-72 (D. Colo. 2020).

The ADA's regulations "elucidate the requirements governing auxiliary aids." *Basta*, 56

---

[1] To the extent Title II of the ADA and the Rehabilitation Act are treated differently it is merely because, under Title II, a public entity is required to give primary consideration to the request when determining the auxiliary aids, whereas a recipient of federal financial assistance is only required to provide effective communication. *See* 28 C.F.R § 35.160(b)(2); *see also Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 52 F.4th 858, 868-69 (9th Cir. 2022).

F.4th at 316. Thus, to provide effective communication an entity "shall take appropriate steps to ensure that communications with [deaf individuals] are *as effective as communications with others*." 28 C.F.R. § 35.160(a)(1) (emphasis added). Moreover, the entity "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities [] an *equal opportunity to participate in* and enjoy the benefits of a [program]." 28 C.F.R. § 35.160(b)(1) (emphasis added); *see also* 28 C.F.R. § 36.303 (Auxiliary aids and services). In sum, there is no rational dispute that Defendant is obligated to provide Plaintiff with "equal opportunity to *participate* in obtaining and utilizing" the services provided by Defendant, which includes communicating effectively about the same. *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 834 (11th Cir. 2017).

i.   <u>*Plaintiff was Denied the Equal Opportunity to Participate as an Inmate*</u>

First, the task of determining whether an entity subject to the Rehabilitation Act has provided appropriate auxiliary aids is "inherently fact-intensive" and "[i]t is precisely because of this fact-intensive inquiry that an effective-communication claim often presents questions of fact precluding summary judgment." *See Makeen v. Colorado, Denver City & Cnty.,* No. 14-CV-03452-CMA-CBS, 2015 WL 13215660, at *11 (D. Colo. Dec. 18, 2015), *report and recommendation adopted sub nom. Makeen v. State of Colorado, Denver City & Cnty.,* No. 14-CV-03452-CMA-CBS, 2016 WL 47923 (D. Colo. Jan. 5, 2016) (holding that whether the Defendants provided appropriate auxiliary aids is a fact-specific inquiry that must address the totality of the circumstances); *see also Mullen v. S. Denver Rehab.*, LLC, No. 18-CV-01552-MEH, 2020 WL 2557501, at *27 (D. Colo. May 20, 2020) (quoting *Biondo v. Kaledia Health*, 935 F.3d 68, 74 (2d Cir. 2019), *cert. denied sub nom. Kaleida Health v. Biondo*, 140 S. Ct. 956, 206 L. Ed. 2d 120 (2020).

12

Second, there is clearly evidence that would empower the finder of fact to conclude that Ms. Mullen cannot effectively communicate through written or spoken English, which prevented her from effective communications with Defendant. There is no dispute that Defendant did not provide an ASL interpreter, whether remotely or in person, for the duration of Ms. Mullen's incarceration which included the booking process, medical visits, and her release. *See* ASUMF ¶ 12. Roger Williams and Ms. Mullen will present testimony that Ms. Mullen cannot effectively communicate in written or spoken English. *See* **Ex. 4**, Roger Williams Report at 5-7; *see also* Ex. H to MSJ, Mullen Dep. at 13:20-21 [ECF 84-8]. Moreover, Defendant's own employee acknowledged that there was not effective communication between Defendant and Ms. Mullen. *See* **Ex. 3**, Kraefft Dep. at 109:16-21, 114:11-115:2, 115:10-25. Thus, relying on Ms. Mullen's testimony, Mr. Williams testimony, and Defendant's own witnesses' testimony, a reasonable juror could find that Ms. Mullen was denied the "equal opportunity to *participate*" in Defendant's services and summary judgment is not appropriate.

### ii.    <u>Defendant was Deliberately Indifferent Toward Ms. Mullen</u>

With respect to Ms. Mullen's claim for nominal damages, she need not establish that Defendant's actions were intentional. *See Griffith v. State of Colo., Div. of Youth Servs*., 17 F.3d 1323, 1327 (10th Cir. 1994). However, to recover compensatory damages, Plaintiff must demonstrate that the Defendant acted with deliberate indifference. *Barber ex rel. Barber v. Colo. Dep't of Revenue*, (10th Cir. 2009). "[D]eliberate-indifference standard 'does not require a showing of personal ill will or animosity toward the disabled person'[;]...[t]he plaintiff must show, however, '(1) [that the defendant had] knowledge that a harm to a federally protected right [was] substantially likely, and (2) a failure to act upon that...likelihood.' " *Id* at 1227.

Ms. Mullen can demonstrate that Defendant had knowledge that "a harm to a federally

protected right was substantially likely" for several reasons. *Barber ex rel. Barber*, 562 F.3d at 1227. First, Defendant, who has previously been sued for not providing ASL interpreters, has implemented clear and unambiguous policies and procedures as it applies to deaf inmates. *See Siaki v. Darr*, No. 11-cv-03074-JLK, 2012 U.S. Dist. LEXIS 139274 *2 (D. Colo. Sept. 27, 2012); see also Ex. C to MSJ [ECF 84-3]; Ex. G to MSJ [ECF 84-7]; *see also* Ex. D to MSJ [ECF 84-4]; *see also* Ex. O to MSJ [ECF 84-14]; *see also* MSJ SUMF ¶¶ 9-11. Defendant's policy is as follows: If an inmate requests an ASL interpreter, Defendant will provide one. *See* Ex. D to MSJ [ECF 84-4]. Defendant's policies do not contain any exceptions as they relate to a deaf inmates' request for an ASL interpreter. *Id*. Second, as applied in this case, Ms. Mullen requested an ASL interpreter by circling "Yes" on Defendant's ASL interpreter request form. *See* Ex. O to MSJ [ECF 84-14]. Thus, there is ample evidence for a fact finder to conclude that Defendant knew Ms. Mullen required an ASL interpreter to effectively communicate and failing to provide the same would harm Ms. Mullen's federally protected rights. *See Havens*, 897 F.3d at 1264.

Next, Ms. Mullen can show that there is a question of fact that Defendant failed to act by providing an ASL interpreter even though it knew that Ms. Mullen required the same for effective communication. Defendant's argument that the deputy's inaction[2] is due merely due to bureaucratic slippage or negligence is dubious because its own staff attempted to provide an in-house interpreter. *See* MSJ at 15 [ECF 84]; *see also* 30(B)(6) Dep. at 125:11-14, 170:5-8*; see also* Kraefft Dep. at 29:15-18, 134:22-135:6; *see also* Ex. M to MSJ, Kraefft Dep. at 42:21-22 [ECF 84-13]. In other words, the actions by the deputies were not simply an oversight but

---

[2] Defendant argues that the Sheriff is not liable in his official capacity because the Sheriff, himself, was not aware of the request for ASL interpreters. The Court already dismissed this argument at the MTD stage, and the court should reject the same in the MSJ. *See* MSJ at 14-15; *see also* Order MTD at 8-11 [ECF 58].

intentional. The very act of contacting an interpreter demonstrates that Defendant _knew_ that it needed to provide an interpreter. *See* **Ex. 1**, 30(b)(6) Dep. at 125:9-14, 170:5-14, 197:15-21, 200:5-23. Importantly, Defendant also admitted that it _knew_ that there were resources available to Defendant, outside of the in-house interpreter, that would have allowed Defendant to provide an interpreter at the time of Ms. Mullen's incarceration. *See* **Ex. 1**, 30(b)(6) Dep. at 213:5-8, 217:6-15, 218:11-17, 221:5-222:4, 224:14-225:15. When Defendant's 30(B)(6) deponent was asked about Adams County Sheriff's Office knowledge of external 24/7 interpreting agencies, he stated, "I'm sure that Adams County Sheriff's Office had an awareness that such services existed." *Id.* Defendant simply elected _not to utilize the same_, and instead elected to move forward with Ms. Mullen's incarceration without an ASL interpreter. *See* SUMF/RSUMF ¶¶ 47-50, 54; *see also* ASMUF ¶ 15. The foregoing clearly demonstrates that there is a question of fact as to whether Defendant acted with deliberate indifference towards Ms. Mullen's federally protected rights. *See Barber ex rel. Barber*, 562 F.3d at 1227.

This case also demonstrates Defendant's policy decision to not provide ASL interpreters even after being subject to a lawsuit for the same. *See Siaki v. Darr*, No. 11-cv-03074-JLK, 2012 U.S. Dist. LEXIS 139274 *2 (D. Colo. Sept. 27, 2012); see also Ex. C to MSJ [ECF 84-3]. At the time of Ms. Mullen's incarceration, Defendant only allocated resources for one individual to provide ASL interpreting services to deaf inmates after the hours of 8:00 am and prior to 5:00 pm. *See* **Ex. 1**, 30(B)(6) Dep. at 126:22-127:3, 198:9-21. Thus, especially considering its prior litigation, Defendant knew that, if a deaf inmate arrived prior to 8:00 am or after 5:00 pm and the interpreter was out, it would need to utilize other interpreting options, or alternatively, violate a deaf inmate's federally protected rights. *Id; see also Siaki* No. 11-cv-03074-JLK, 2012 U.S. Dist. LEXIS 139274 *2. When confronted with a deaf inmate arriving after hours (*i.e.*, Ms. Mullen),

Defendant, despite knowledge that Defendant could call an interpreting agency, simply elected not to. *See* **Ex. 1**, 30(b)(6) Dep. at 213:5-8, 217:6-15, 218:11-17, 221:5-222:4, 224:14-225:15; *see also* SUMF/RSUMF ¶¶ 47-50, 54; *see also* ASMUF ¶ 15. The foregoing illustrates the deliberate indifference standard on an institutional level: Defendant knew it could accommodate Ms. Mullen, had the resources to accommodate her, but refused to put in place a policy that would ensure effective communication for deaf inmates before 8:00 am and 5:00 pm. *See Barber ex rel. Barber*, 562 F.3d at 1227.

## II.   MULLEN CAN RECOVER NON-EMOTIONAL DISTRESS COMPENSATORY DAMAGES.

First, Defendant misstates the nature of the relief sought by Ms. Mullen, and in turn, fails to properly analyze Ms. Mullen's ability to recover damages in this litigation. In addition to requesting emotional distress damages and injunctive relief, Ms. Mullen specifically identifies following categories of damages, which are not precluded by *Cummings*: physical pain and suffering, inconvenience, physical injury, and her reasonable attorney's fees and costs. *See* Am. Compl. at ¶¶ 188, 190, 198, 200, 208, 210 [ECF 16]; *see also Williams v. Colorado Dep't of Corr.*, No. 21-CV-02595-NYW-NRN, 2023 WL 3585210, at *7 (D. Colo. May 22, 2023) (permitting physical pain and suffering damages under the Rehabilitation Act). Recently, courts have held that a plaintiff may recover compensatory damages under the loss of opportunity theory even when the same is not spelled out in the complaint. *Chaitram v. Penn Med.-Princeton Med. Ctr.*, No. CV2117583MASTJB, 2022 WL 16821692, at *2 (D.N.J. Nov. 8, 2022) (citing *Montgomery v. D.C*, No. 18-1928, 2022 WL 1618741, at *25 (D.D.C. May 23, 2022) ("while [plaintiff] cannot recover either emotional distress or reputation damages in light of *Cummings*, [s]he may be able to recover some small amount of damages to compensate [her] for the opportunity [she] lost when [she] was denied the ability to meaningfully access and

participate in her own [interrogation].").[3]

In this case, Plaintiff will be able to establish that as a direct and proximate result of Defendant's discrimination toward Ms. Mullen, she suffered physical pain and suffering, inconvenience, and physical injury. The physical pain that Ms. Mullen endured included, but is not limited to, sitting in a painful position for her prosthetic leg for a prolonged period of time in the arresting police officer's vehicle; the denial of her prescribed pain medications, oxycodone and Robaxin, and curated, high insulin dosages; holding the restroom for on or about two (2) hour at Defendant's facility; and sleeping in an unsteady and rickety wheelchair overnight given the inaccessibility of the cot in her cell. *See* **Ex. 2**, Mullen Dep. at 38:23-39:1, 48:20-22, 53:11-17, 31:7-20, 33:1-10, 48:3-4, 62:9-19, 63:15-18, 66:4-5, 56:12-16, 62:7-8, 83:21-25; *see also* Ex. H to MSJ, Mullen Dep. at 71:23-25, 69:15-24, 70:5-7 [ECF 84-8]. Ms. Mullen attempted to communicate to a nurse at Defendant's facility that she "was in a lot of pain, just a horrible pain," but without the aid of an ASL interpreter, she was unable to communicate her pain to anyone at the detention facility. *See* **Ex. 2**, Mullen Dep. at 68:19-21. In her deposition, Ms. Mullen explained that, without her prescribed medications while at Defendant's facility, she was "in a lot of pain" and "being very expressive," because "the pain was out of control." *See* Ex. H to MSJ, Mullen Dep. at 71:21-25 [ECF 84-8].

Moreover, Ms. Mullen will be able to demonstrate that she was denied the opportunity to meaningfully participate in Defendant's booking process and ensuing medical treatment. Defendant testified that the booking process can be a lengthy and complex transaction that, per

---

[3] It is Plaintiff's position that her claim for compensatory damages encompasses a claim for nominal damages. *See Griffith v. State of Colo., Div. of Youth Servs.*, 17 F.3d 1323, 1327 (10th Cir. 1994). Nevertheless, in an abundance of caution and based on the recent developments in the case law applying *Cummings*, Plaintiff will be seeking leave to amend the Amended Complaint in conjunction with the summary judgment pleadings.

policy, if an ASL interpreter is requested one must be provided. *See* ASUMF ¶ 76. Defendant's deputy testified that the "booking process" for an arrestee consists of a pat down, a full body scan, taking a mug shot, signing property and medical authorization paperwork, fingerprinting, participating in an orientation session or by watching a video, changing into jail clothing, being given a phone call, and receiving medical treatment from a nurse. *See* **Ex. 3**, Kraefft Dep. at 13:7-14:15, 143:16-19; see also Ex. M to MSJ, Kraefft Dep. at 92:17-22 [ECF 84-13]. While at Defendant's facility, Ms. Mullen underwent this extensive process without an ASL interpreter, thus she could not effectively or meaningfully participate. Defendant's deputy admits the booking process was frustrating and difficult as she was unable to effectively communicate with Ms. Mullen. *See* **Ex. 3**, Kraefft Dep. at 115:10-17. For example, Deputy Kraefft states that with inmates she explains the booking process as it is conducted to calm arrestees down, and specifically, while conducting a pat down, Deputy Kraefft will explain why an individual's bra or waistband is being checked, to put the individual at ease. *See* Ex. M to MSJ, Kraefft Dep. at 39:1-9, 40:9-13 [ECF 84-8]. However, without the presence of an ASL interpreter, Deputy Kraefft was unable to do the same or meaningfully explain the booking process to Ms. Mullen. Defendant also admits that that it is important for individuals to understand the booking process. *See* **Ex. 1**, 30(B)(6) Dep. at 83:20-84:1. While Defendant argues that Ms. Mullen was processed, provided a cell, and arranged to appear at the earliest available court hearing with an ASL interpreter present, there is more to meaningful access and communication then merely processing and housing Ms. Mullen at Defendant's detention facility. *See* MSJ at 15 [ECF 84].

Second, Defendant argues that nominal damages are unavailable under *Cummings* while relying on an indecisive opinion from the Seventh Circuit in *Hacker*. *See* MSJ at 21 [ECF 84]. However, in *Hacker* the Seventh Circuit chose not to address the issue of nominal damages

under the Rehabilitation Act, and the developing consensus is that nominal damages are available under the Rehabilitation Act. *See Nieves v. The Plaza Rehabilitation & Nursing Center & Citadel Care Centers*, No. 120CV01191JLROTW, 2023 WL 4763945, at *10 (S.D.N.Y. July 26, 2023); *Klaneski v. Bristol Hosp., Inc.*, No. 3:22-CV-1158 (VAB), 2023 WL 4304925, at *4 (D. Conn. June 30, 2023); *Vega-Ruiz v. Northwell Health Sys.*, No. 19-CV-537(GRB)(AYS), 2023 WL 2587508, at *3 (E.D.N.Y. Mar. 20, 2023); *A.T. v. Oley Valley Sch. Dist.*, No. CV 17-4983, 2023 WL 1453143, at *4 (E.D. Pa. Feb. 1, 2023); *Doe v. Fairfax Cnty. Sch. Bd.*, No. 118CV00614MSNIDD, 2023 WL 424265, at *5 FN. 2 (E.D. Va. Jan. 25, 2023).

### III.    MS. MULLEN'S CLAIMS FOR INJUNCTIVE RELIEF ARE NOT MOOT

The circumstances of this case demonstrate that injunctive relief is warranted in this case because Defendant has discriminated against Deaf inmates in the past, changed their policies, and still discriminated against a Deaf inmate, despite their updated policies. Standing for injunctive relief is not limited to only a showing of a continuing injury or real and immediate threat of being injured in the future. *See Majocha v. Turner*, 166 F. Supp. 2d 316, 325 (W.D. Pa. 2001); *see also Gillespie v. Dimensions Health Corp.*, 369 F. Supp. 2d 636, 645 (D. Md. 2005). A plaintiff can show standing for injunctive relief when a plaintiff shows a refusal to change a policy or practice. *Id.*  Defendant's position that Ms. Mullen did not need an ASL interpreter, despite its own updated policies, demonstrates Defendant's refusal to change their practice as it relates to deaf and hard of hearing individuals. Plaintiff's claims for injunctive relief are not mooted as Plaintiff can still seek additional relief such as requesting Court supervision of Defendant's policies and actions towards Deaf and hard of hearing inmates like in *Siaki v. Darr*, No. 11-cv-03074-JLK, 2012 U.S. Dist. LEXIS 139274 *2 (D. Colo. Sept. 27, 2012). *See* Ex. C to MSJ [ECF 84-3].

## IV.    THE REHABILITATION ACT PRECLUDES ELEVENTH AMENDMENT IMMUNITY.

Defendant's argument regarding immunity as an instrument of the State is baseless. None of the twenty (20) cases cited by Defendant address immunity in the context of the Rehabilitation Act, which was enacted pursuant to Congress's Spending Clause power, and which states:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court *for a violation of section 504 of the Rehabilitation Act of 1973*, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. 7 2999d-7(a)(1) (emphasis added); *see also Levy v. Kansas Dept. of Social and Rehabilitation Services,* 789 F.3d 1164, 1169 (10th Cir. 2015). The plain language of 42 U.S.C. 7 2999d-7(a)(1), and the Tenth Circuits holding in *Levy* are dispositive of the issue of Eleventh Amendment.

WHEREFORE, Plaintiff respectfully requests that this Court reject Defendants Motion for Summary Judgment in its entirety.

Respectfully submitted this 4th day of August 2023.

Respectfully submitted,

KONTNIK | COHEN, LLC

*s/ Spencer J. Kontnik*
Spencer J. Kontnik
Austin M. Cohen
Matthew L. Fenicle
201 Steele Street, Suite 210
Denver, Colorado 80206
Phone: (720) 449-8448
Fax: (720) 223-7273
E-mail: skontnik@kontnikcohen.com
E-Mail: acohen@kontnikcohen.com
E-Mail: mfencile@kntnikcohen.com
*Attorneys for Plaintiff*