IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02398-CNS-MDB

CYNTHIA MULLEN,

    Plaintiff,

v.

GENE CLAPS, in his official capacity as the Sheriff of the County of Adams,

    Defendants.

_____

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
_____

Ms. Mullen does not contest the vast majority of the Sheriff's undisputed facts in his motion. Of the few facts she does contest, the disputes are minor and not enough to foreclose summary judgment in the Sheriff's favor. Neither he nor his deputies displayed deliberate indifference towards Ms. Mullen. Her claims, moreover, are moot and even if they were not the Sheriff has immunity from damages.

## REPLY CONCERNING UNDISPUTED FACTS

6. Ms. Mullen admits the Sheriff receives funding from a variety of sources, including federal funding, but later argues that the receipt of federal funding constitutes a waiver of immunity. (Resp. at 20.) A copy of the federal funding award is attached hereto as Exhibit AA.

15. This fact does not take a position on either the existence or type of certification of the listed interpreters, about which there is conflicting evidence. (Ex. BB at 3.) The Sheriff's 30(b)(6) designee testified Deputy Runge does not meet the certification level in Policy 330. (Exs. CC & DD at 70:20-71:5.) No other specific policy was addressed. The hypothetical availability of other certified interpreters is a new disputed "additional material fact" addressed at fact 70.

17. Deputy Runge did not work the evening shift spanning August 24 to 25, 2020. There is no evidence Deputies Kraeft or Stein, or the then-Sheriff, knew this at the time.

19. The fact as stated does not take a position on the length of Ms. Mullen's usage of the SVRS, her knowledge of Post Order 109.1.2, or the Deputies' discretion regarding the SVRS.

24, 26, 27, 28, 32, 33, 34, and 38.   Ms. Mullen admits she can read lips, and read and write in English at up to an Eighth-grade level, but challenges whether her communication skills would allow her to "effectively communicate." That adopts a legal standard addressed below.

29. Ms. Mullen disputes the use of the plural to describe her ability to "read and sign

1

agreement*s* without an interpreter." (Resp. at 3.) The plural "agreements" comes from *Mullen v. S. Denv. Rehab*, 2020 U.S. Dist. LEXIS 88638, at 3, ¶¶ 6 & 9 (D. Colo. May 20, 2020), regarding her execution of multiple "leases," as well as her ability to complete multiple forms of transactions. Whether rental agreements are "simple boilerplate" documents is a legal characterization.

44. Ms. Mullen's denial ignores her own response to Request for Admission 3 (Ex. J, ECF No. 84-10) and her subsequent stipulation to fact 20 in the Amended Scheduling Order (ECF No. 68), neither of which have been withdrawn or amended. According to Ms. Mullen's deposition, she watched the video and "assumed" it did not contain signing because the speaker's mouth was moving. Ms. Mullen does not offer reconciliation of her own various responses.[1]

45, 50, 51, 53[a], and 58.    Ms. Mullen admits the Deputies wrote to her in English on multiple occasions and that she wrote in English on multiple occasions, but challenges whether these specific communications constituted "effectively communicat[ions]," which adopts a legal standard addressed in the argument section.

54[b].   Deputy Kraefft's failure to keep the handwritten notes violated Policy 330.10. (Exs. CC & DD at 131:11-132:8.) Deputy Kraefft testified this was inadvertent and occurred due to placing the notes in her stack of papers that are shredded at the end of shift. (Ex. M at 94:1-7.)

55. Ms. Mullen's denial does not correspond with the undisputed fact. The undisputed evidence is that medical unit has handicapped accessible restrooms and beds. Ms. Mullen testified she was taken to medical and used the restroom there. (Ex. EE at 62:23-63:2.) She was also placed

---

[1] The issue, thus, does not present an impermissible credibility determination between two witnesses, but whether a plaintiff can create an internal inconsistency with her prior admissions to defeat summary judgment. In any event, in her response Ms. Mullen only relies on the lack of the ASL orientation video as a failure to mitigate damages from the absence of an in-person interpreter. (Resp. at 18.)

in a single medical cell. (*Id.* at 69:13-17.) The undisputed fact takes no position on how long it took to move her to the medical unit, whether she used the bed, or why she may not have used it.[2]

59, 60, 61, 62, 63.   Ms. Mullen admits the corresponding facts, but challenges their materiality. Materiality is a legal question going to the substantive law governing the outcome. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### RESPONSE CONCERNING "ADDITIONAL MATERIAL FACTS"

The Sheriff hereby responds to Ms. Mullen additional 11 material facts:

68, 69. Deputy Kraefft admitted communicating with Ms. Mullen without an ASL interpreter was "difficult" and "frustrating." (Ex. 3.) She also stated it was difficult to explain the lack of an *ASL interpreter* "who can effectively perfectly communicate." (*Id.* at 114:15-16.)

70.   Denied. No effort was made at the deposition, which occurred on March 8, 2023, to establish which, if any, of the various services advertised were actually available for a midnight call-out on August 24 to 25, 2020, during the midst of the Covid-pandemic lockdowns.[3] The 30(b)(6) designee merely testified that deposing counsel's recitation of the content to the advertisements matched the document shown to him, and that 24-hour on-call ASL translation services did exist in 2020. (Ex. DD at 212:22-24; 213:20-214:2; 217:17-218:2.[4])

---

[2] Ms. Mullen's claim against WellPath for her medical treatment was dismissed. ECF No. 49 at 29. Final judgment was entered (ECF No. 64), and Ms. Mullen did not appeal.

[3] *See*, *e.g.*, *Mena v. Paz*, No. 2:20-cv-00036-CW-JCB, 2020 WL 4732126, *5-6, n. 9 (D. Utah Aug. 14, 2020); *Colo. Dep't of Pub. Health & Env't*, https://covid19.colorado.gov/public-health-executive-orders (setting forth various Public Health Covid lockdown orders in Colorado by date).

[4] The various advertisements are hearsay and not admissible. The advertisements were printed at 10:30 p.m. the night before the deposition and were not disclosed. (Ex. FF & Ex. DD at 205:15-206:4; 212:9-24; 213:20-214:2; 215:17-24; 217:17-218:2; 219:14-25.) The accuracy of their content has not been established by the third-parties. Nor were they within the scope of 30(b)(6) notice. (Ex. GG.)

71.     Admitted as to the dates at issue, August 24 to 25, 2020.

72.     The Sheriff's 30(b)(6) designee testified Deputy Runge had taken the shift off and did not respond. (Ex. DD at 200:13-18.) No testimony was offered about Deputy Runge's intent.

73.     Admitted in part. Post Order 109.1 does not contain any listed exceptions. (Ex. D.) Other policies, such as Policy 300, contain multiple factors to balance and contemplate that an inmate might not receive her preferred accommodation. (Ex. CC at 330.10.)

74.     The 30(b)(6) designee testified that an ASL translator would have assisted in the booking process. (DD at 189:25-190:9.) He did not testify as to what Deputies Stein or Kraefft knew on August 24 to 25, 2020. Neither the 30(b)(6) designee nor the Deputies testified that Ms. Mullen "requires an ASL interpreter to communicate." (Resp. at 7.)

75.     Admitted as to Policy 330.4.3.

76, 77[a].     Ms. Mullen was not provided an ASL interpreter prior to her remote court appearance the morning of August 25, 2020, which occurred while she was at the detention facility. (Ex. S.) Deputy Stein requested the ASL interpreter be provided at the hearing. (Ex. R.) ASL court interpreters are provided under a separate contract. (Ex. DD at 232:17-233:10.)

77[b].  The 30(b)(6) designee testified that not providing Ms. Mullen her requested ASL interpreter prior to her court appearance was a failure:

> I don't believe there was any intent in this. We did try. However, we did also fail. We did not get her a sign language interpreter within our […] boundary of time like we were supposed to.

(Ex. DD at 75:6-9.)

78.     See response to undisputed fact 15.

**ARGUMENT**

Law of the case does not apply as to denials of motions to dismiss where no judgment has been entered or no interlocutory appeal taken. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1252 (10th Cir. 2011). In such cases, district courts retain jurisdiction to reconsider any ruling prior to the entry of a judgment. *See* Fed. R. Civ. P. 54(b). Nor is a party bound at the motion for summary judgment phase to only that caselaw cited at the motion to dismiss stage. The only waiver rule in Fed. R. Civ. P. 12(h)(1) pertains to certain affirmatives defenses that are *not made* in such a motion.

**I.  NEITHER THE SHERIFF NOR ANYONE ELSE DISCRIMINATED AGAINST MS. MULLEN.**

Under the Rehabilitation Act, the Sheriff is responsible only for his own actions. The 1992 amendments to the Act were passed to align its standards with the recently passed ADA *in cases involving employment*. *Woodman v. Runyon*, 132 F.3d 1330, 1339 n.8 (10th Cir. 1997); *Schrader v. Ray*, 296 F.3d 968, 973 (10th Cir. 2002). Otherwise, Section 504 was "patterned after Title VI," and reasoning from Title VI and Title IX cases "applies with reference to § 504." *Pushkin v. Regents of Univ. of Colo.*, 658 F.2d 1372, 1379 (10th Cir. 1981). *Gebser*, therefore, applies.

As for Ms. Mullen's reliance on *Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850 (10th Cir. 2003), it was decided under the Title II of the ADA, and relied upon the DOJ's implementing Title II regulations, which do not apply in this case. The DOJ's implementing regulations do not cover claims under the Rehabilitation and the DOJ has no authority to pass such regulations. Ms. Mullen does not argue otherwise. None of the cases cited by Ms. Mullen hold that the DOJ's ADA regulations apply in non-employment Rehabilitation Act cases.[5] *Cf. Chaffin*, 348 F.3d at 858 & ns.

---

[5] Ms. Mullen's response here is in tension with her response to the Rule 702 motion where she argued, at least in part, Mr. Williams was not tying his opinions to the DOJ's regulations. (ECF 86 at 6.)

5

1 & 2 ("The regulations simply provide the details necessary to implement *the statutory right created by § 12132 of the ADA*.") (emphasis added). Ms. Mullen simply did not attempt an ADA claim here. The Sheriff's position in this case, therefore, would not "undo decades of legislation" or hold that "effective communication" (Resp. at 10-11) is not necessary *under Title II* when that statute or implementing regulations are applicable. Rather, the Sheriff's point is that the Rehabilitation Act is not mere surplusage to the ADA. In non-employment cases, the statutory language of the Rehabilitation Act imposes different standards from the ADA.

Nothing the former Sheriff or deputies did on the evening of August 24 or morning of August 25, 2020 evince deliberate indifference to Ms. Mullen's needs. *Updike v. Multnomah Cty.*, 870 F.3d 939, 951-52 (9th Cir. 2017) (affirming grant of summary judgment to detention facility despite failure to initially provide an ASL interpreter, which resulted in an extra day of detention). A single failure of an internal policy (even when derived from an expired settlement agreement) is not equivalent to a statutory violation. The communications between the deputies and Ms. Mullen were sufficient to process her through booking, place her in the medical ward, and schedule her initial court appearance for the following morning. At that time, she was provided an interpreter and was bonded out by mid-day. Thus, the absence of an interpreter from approximately mid-night to 9:00 a.m. did not delay Ms. Mullen's processing or release in any material way.

The record here is a far cry from *Randolph v. Rodgers*, 170 F.3d 850 (8th Cir. 1999), cited in *Chaffin*. Ms. Mullen can read and write in written English up to an Eighth-grade level–according to her own expert, Mr. Williams.[6] Most significantly, the absence of an ASL interpreter in *Rodgers*

---

[6] Mr. Williams, moreover, did not review the documents and communications in this case. (ECF 90 at 9-10.) Thus, he cannot present unqualified testimony that "Ms. Mullen cannot effectively communicate in written or spoken English." (Resp. at 13.)

6

caused an extension of the length of his incarceration by an additional 6 days. Nothing in *Rodgers* requires the kind of on-demand ASL interpretation that forms the basis for Ms. Mullen's claim.

## II. MS. MULLEN MAY NOT BELATEDLY ASSERT NEW FORMS OF COMPENSATORY DAMAGES

Ms. Mullen did not plead or disclose nominal damages, even assuming they are available under the Rehabilitation Act, nor has she filed a motion to amend her complaint to attempt to add them. *Contra Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *11 (S.D.N.Y. June 25, 2010) ("[p]laintiffs do not include a plea for nominal damages in the Second Amended Complaint and they cannot use their motion submissions to amend their pleadings"). *Griffith* is not the contrary. It holds only that nominal damages are compensatory in nature under Title VII and may not be awarded. 17 F.3d 1323, 1327 (10th Cir. 1994).

Ms. Mullen's attempt to pursue new forms of compensatory damages suffers from several problems. First, Ms. Mullen has not previously disclosed the existence or amount of these damages as required by Fed. R. Civ. P. 26(a)(1) and has repeatedly disclaimed any economic damages. Well past the discovery cutoff, she cannot now generically assert such damages in her brief without supporting documentation or precise calculation or by relying solely on the allegations in the complaint. Fed. R. Civ. P. 56(c).

Second, "physical pain and suffering" is equally precluded by *Cumming*'s rejection of all damages but those traditionally available in contract cases. *Cummings*, 2022 WL 1243658 at *13-14. Ms. Mullen admits she has no economic damages. UDF No. 64. Ms. Mullen's new categories of damages, rather, are tortious in nature. *See*, *e.g.*, *Cianciott v. Hospice Care Network*, 927 N.Y.S.2d 779, 785 (N.Y.S. July 26, 2011) ("[P]ain and suffering damages are not ordinarily recoverable in breach of contract actions."); *accord* Colo. Rev. Stat. §13-21-102.5. Nor could Ms.

Mullen prove the necessary physical injury underlying it. She previously denied any medical injuries or costs. *See* UDF No. 65. Even if this Court were to recognize "lost opportunity" damages, such damages would be "some small amount." Moreover, Ms. Mullen was not denied participation in a "benefit"–*i.e.*, the jail booking process–that can be calculated with reference to a private marketplace or a listed sales price involving a voluntary transaction. Most of Ms. Mullen's other identified lost opportunities relate to her dismissed claims against WellPath.

Finally, attorney's fees and costs are only available if Ms. Mullen's recovers some other form of damages. *Moseley v. Bd. of Ed. of Albuquerque Pub. Sch's*, 483 F.3d 689, 694 (10th Cir. 2007). The amount of her compensatory recovery, moreover, may limit or even bar them. *Farrar v. Hobby*, 506 U.S. 103, 115 (1992).

### III.   MS. MULLEN'S REQUEST FOR INJUNCTIVE RELIEF IS MOOT.

Ms. Mullen has not provided any evidence that either before or after the change in the elected Adams County Sheriff that a recurrence of the events of August 24, 2020 are likely to recur- either to Ms. Mullen or to someone similarly situated. The call list relying solely on the use of in-house interpretation has been replaced with a 24-hour on-call third-party ASL translation service– the very kind of service Ms. Mullen's complains was not in place on August 24, 2020. Thus, there has been no refusal to change a policy. The fact the Sheriff denies a violation of the Rehabilitation Act occurred on August 24, 2020 is a legal defense asserted in litigation. Ms. Mullen cannot use injunctive relief to deny a party of its legal arguments. (Resp. at 19.) The fact remains there is no policy or conduct at the detention facility complained of by Ms. Mullen that can be further modified by an injunctive order. And Ms. Mullen does not argue for any.

As for the 2012 settlement in *Siaki*, no violations were found or admitted by the Sheriff in

that agreement. (Ex. C at 2.) During the two-year effective window of court supervision, moreover, no complaints were made to the Court under Sections 6 and 7. (*Id.* at 7-8; *see* Ex. HH, Dkt. Sht. 11-cv-03074-JLK.) Ms. Mullen, moreover, has adduced no evidence of similar complaints between 2012 and 2020 or after the Sheriff switched to a third-party translator. Under such circumstances, Ms. Mullen's request for injunctive relief is moot. *Mosley*, 483 F.3d at 692-93.

## IV. THE ADAMS COUNTY SHERIFF HAS NOT WAIVED ELEVENTH AMENDMENT OR GOVERNMENTAL IMMUNITY

In her single paragraph response, Ms. Mullen does not contest any of the factual predicates cited in support of the Sheriff's Eleventh Amendment immunity. Nor does she argue her pre-trial incarceration on state criminal charges are a local, not a State function. *See* Colo. Rev. Stat. §§ 17-26-102 & 103; *Howard through Young v. Denver*, 837 P.2d 255, 257-58 (Colo. App. 1992) (outlining respective roles of the Sheriff and state courts with reference to incarceration). Finally, she does not argue the Sheriff does not satisfy the *McMillian* or *Couser* factors for Eleventh Amendment immunity. Rather, Ms. Mullen relies on language drawn from the Rehabilitation Act Amendments of 1986, 42 U.S.C. § 2000d-7(a)(1), which purports to waive Eleventh Amendment immunity pursuant to Congress's Spending Clause power, U.S. Cont., Art. I, § 8, cl. [1]. (Resp. at 20, citing *Levy v. Kansas Dep't of Social & Rehab. Servs.*, 789 F.3d 1164, 1169 (10th Cir. 2015).)

The Second Circuit has held that accepting federal funds does not necessarily waive sovereign immunity to Rehabilitation Act claims based on *South Dakota v. Dole*, 483 U.S. 203 (1987) and *Fla. Prepaid Postsecondary Ed. Exp. Fund v. College Savings Bank*, 527 U.S. 627, 682 (1999). *See Garcia v. S.U.N.Y. Health Sci. Ctr.*, 280 F.3d 98, 113-15 & n. 5 (2d Cir. 2001). Here, the federal grant at issue in 2020 was for Covid-relief, especially for the provision of personal protective equipment. (Ex. AA.) The grant required the Sheriff to comply with certain federal anti-

discrimination statues (*Id.* at 10, Cond. 21-23) but no reference is made to the Rehabilitation Act (or ADA) in the grant. By itself, explicitly agreeing to obey certain federal laws, or even federal laws generally "can hardly be deemed an express waiver of Eleventh Amendment immunity." *Fla. Dept. of Health & Rehab. Servs. v. Fla. Nursing Home Assn.*, 450 U.S. 147, 150 (1981). Based on the terms of the grant, there is no evidence the Sheriff believed he was relinquishing his right to Eleventh Amendment immunity as required by *College Savings Bank* by accepting those funds.

The Sheriff acknowledges the Tenth Circuit has previously held "[a]n affirmative choice to apply for, and accept, [federal] funds ... serves as an express waiver of immunity" to Rehabilitation Act claims. *Brockman v. Wyo. Dep't of Family Servs.*, 342 F.3d 1159, 1168 (10th Cir. 2003); *see also Arbogast v. Kansas*, 789 F.3d 1174, 1186-88 (10th Cir. 2015). The Sheriff further acknowledges this Court must follow existing Tenth Circuit precedent on this point, *Taylor v. Colo. Dep't of Health Care Policy & Fin.*, No. 12-cv-00300-PAB, 2013 U.S. Dist. LEXIS 25954, *10-11 (D. Colo. Feb. 25, 2013), but preserves this issue for appeal.

Even still, the waiver of Eleventh Amendment immunity *to suit* does not automatically carry with it a waiver of immunity *from damages*. *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011); *Trant v. Oklahoma*, 754 F.3d 1158, 1173 (10th Cir. 2014). In Colorado, only the General Assembly can waive governmental immunity from damages. No such statute exists waiving immunity from damages for violations of the Rehabilitation Act. If Ms. Mullen is otherwise permitted to proceed on any of her asserted damages theories, the Sheriff still retains immunity from those damages.

## CONCLUSION

A one-time inadvertent failure of an internal accommodation policy is not an act of discrimination under the Rehabilitation Act. The Sheriff requests summary judgment in his favor.

DATED:  August 18, 2023.

                Respectfully submitted,

                *s/Michael A. Sink*
                Michael A. Sink
                Assistant County Attorney
                Adams County Attorney's Office
                4430 S. Adams County Pkwy
                5th Floor, Suite C5000B
                Brighton, CO  80601
                Phone:  (720) 523-6116
                Fax:  (720) 523-6114
                msink@adcogov.org
                *Counsel for the Adams County Sheriff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Spencer J. Kontnik
Austin M. Cohen
Matthew L. Fenicle
skontnik@kontnikcohen.com
acohen@kontnikcohen.com
mfenicle@kontnikcohen.com
*Attorneys for Plaintiff*

*s/Michael A. Sink*
Michael A. Sink
Assistant County Attorney
Adams County Attorney's Office
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone:  (720) 523-6116
Fax:  (720) 523-6114
msink@adcogov.org
*Counsel for Gene Claps*

12