IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-02398-CNS-MDB

CYNTHIA MULLEN,

    Plaintiff,

v.

GENE CLAPS, in his official capacity as the Sheriff of the County of Adams,

    Defendant.

## ORDER

Before the Court is Defendant's Motion to Preclude Expert Testimony of Roger C. Williams Pursuant to Fed. R. Evid. 702, ECF No. 79, Defendant's Motion for Summary Judgment, ECF No. 84, and Plaintiff's Motion for Reconsideration of the Order on Motion to Strike Plaintiff's Demand for a Jury, ECF No. 116. For the reasons below, the Court GRANTS in part and DENIES in part Defendant's Rule 702 motion, ECF No. 79, the Court DENIES Defendant's motion for summary judgment, ECF No. 84, and the Court GRANTS Plaintiff's motion for reconsideration.

### I. FACTUAL BACKGROUND

Plaintiff Cynthia Mullen is a 64-year-old woman who is deaf; she primarily uses American Sign Language (ASL) to communicate. ECF No. 16 (Am. Compl.), ¶ 1; ECF

1

No. 84, ¶ 23. Plaintiff also has diabetes, high blood pressure, and an amputated leg. ECF No. 84, ¶ 22.

On August 24, 2020, the Brighton Police Department arrested Ms. Mullen following an alternation in a car and charged her with domestic violence and assault in the third degree. *Id.*, ¶¶ 36, 39. The Brighton Police officers transported Ms. Mullen to the Adams County Detention Facility, where she arrived at 11:48 p.m. *Id.*, ¶ 40. The arresting officers indicated to the Detention Facility staff that Ms. Mullen is hearing impaired. *Id.*, ¶ 41. After intake, deputies at the Detention Facility transported Ms. Mullen using a wheelchair. *Id.*, ¶ 42.

The booking officer communicated with Ms. Mullen in writing using a preprinted exhibit. *Id.*, ¶ 45. In response, Ms. Mullen requested an ASL interpreter. *Id.*, ¶ 46. The booking officer called an ASL interpreter, Deputy Rungee, but Deputy Rungee did not answer or return the call that evening. *Id.*, ¶¶ 47–49. Ms. Mullen completed her intake paperwork in writing and was provided access to a Sorenson video phone, which she attempted to use one time. *Id.*, ¶¶ 51–52. She was then transferred to the medical unit for the duration of her overnight incarceration. *Id.*, ¶ 53.

Ms. Mullen appeared before the Adams County District Court by video from the detention center on August 25, 2020, between 8:30 and 10:00 a.m. *Id.*, ¶ 57. She communicated with court services in writing prior to her court appearance and filled out her bond application. *Id.*, ¶ 58. During her appearance before the Adams County District Court, Ms. Mullen was provided with an ASL interpreter. *Id.*, ¶ 59. She left the Detention Facility on August 25, 2020, at 12:19 p.m. *Id.*, ¶ 60.

Discovery closed in early 2023. Of note, Ms. Mullen admits in her summary-judgment response that she "did not incur any economic damages as a result of her overnight incarceration." ECF No. 84, ¶ 64; ECF No. 91, ¶ 64. She further admits that she "did not incur any medical injuries or expenses as a result of her overnight incarceration." ECF No. 84, ¶ 65; ECF No. 91, ¶ 65.

## II.  PROCEDURAL BACKGROUND

The root of Ms. Mullen's claim is that the Adams County Detention Facility denied her access to an ASL interpreter following the arrest. On September 3, 2021, Plaintiff filed a complaint in this Court against the Board of County Commissioners for Adams County, Colorado. ECF No. 1. She alleged in her initial Complaint that the Detention Facility (1) discriminated against her based on her disabilities in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and (2) engaged in outrageous conduct under Colorado law. *Id.*, ¶¶ 154–76. She sought damages, reasonable attorney fees, costs, and other "relief . . . to the maximum extent permitted by law." *Id.* at 20.

Plaintiff filed her First Amended Complaint and Jury Demand on November 8, 2021. ECF No. 16. She maintained her Rehabilitation Act claim against the Board of County Commissioners but voluntarily dismissed her outrageous conduct claim. *Id.*, ¶¶ 181–90. She also added two additional Defendants—Adams County Sherriff Richard Reigenborn and WellPath, LLC. *Id.*, ¶¶ 191–210. On November 29, 2022, the Court dismissed co-Defendants Board of County Commissioners and WellPath, LLC, and Defendant Claps substituted in for the third co-Defendant, Sheriff Reigenborn. ECF No. 58 at 13.

3

## III.  LEGAL STANDARD

**A.  Legal Standards Governing Expert Witnesses**

The recently amended Rule 702 of the Federal Rules of Evidence, which governs the testimony of expert witnesses, provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 (as amended on Dec. 1, 2023). Where, as here, a party challenges the admissibility of an expert witness, Rule "702 imposes upon the trial judge an important gate-keeping function with regard to the admissibility of expert opinions." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (citation and quotation omitted). The proponent of expert testimony bears the burden—by a preponderance of evidence—of showing admissibility. Fed. R. Evid. 702; *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

To evaluate admissibility, the Court engages in a "two-step analysis." *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022). First, the Court must decide whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render the opinion. Fed. R. Evid. 702; *see also Roe*, 42 F.4th at 1180. Second, if the

expert is sufficiently qualified, the Court must determine whether the proffered opinions are reliable. *Roe*, 42 F.4th at 1180–81. "The reliability inquiry asks whether the methodology employed by an expert is valid—that is, whether it is based on sufficient data, sound methods, and the facts of the case." *Id.* at 1181 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). The Court also evaluates whether the expert reliably applied the methodology to the facts of the case. *Id.*

The Court's "gatekeeping function requires more than simply taking the expert's word for it." *Id.* (citation and quotation omitted). But the Court's role as a gatekeeper under *Daubert* "is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres of Land Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)

The Court has substantial discretion to determine "*how* to perform its gatekeeping function under *Daubert*." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (emphasis in original); *see also Roe*, 42 F.4th at 1180.

### B. Legal Standards Governing Summary Judgment

Summary judgment is warranted when (1) the movant shows that there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v.*

5

*Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if under the substantive law it is essential to the proper disposition of the claim.'" *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quotations omitted)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

"To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler*, 144 F.3d at 670–71. If met, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (citations and quotations omitted).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "[T]here is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

### C. Legal Standards Governing Motions for Reconsideration

The Federal Rules of Civil Procedure do not provide for a motion for reconsideration. *Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858, 861 (10th Cir. 1995). And where, as here, "a party files a motion for reconsideration prior to the entry of judgment or of a final order, [Federal Rules of Civil Procedure] 59(e) and 60(b) do not apply." *Duran v. Crandell*, No. 10-cv-02490-PAB-KMT, 2012 WL 1649160, at *1 (D. Colo. May 10, 2012). However, district courts have "plenary power to revisit and amend interlocutory orders as justice requires," and the standards are generally the same as a motion for reconsideration. *Id.* There are three main grounds that justify reconsideration: "(1) an intervening change in controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Stated differently, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* Such relief is "extraordinary and may only be granted in exceptional circumstances." *Schmier v. McDonald's LLC*, 569 F.3d 1240, 1243 (10th Cir. 2009) (citation and quotations omitted).

## IV.  ANALYSIS

**A.  Defendant's Motion to Preclude Expert Testimony of Roger C. Williams Pursuant to Fed. R. Evid. 702**

*1.  Mr. Williams's Qualifications and Opinions*

Mr. Williams is a communications expert with expertise in ASL. ECF No. 86 at 2. He has been employed in the field of deafness since 1979 working within residential schools for the deaf, community mental health centers, psychiatric hospitals and state agencies serving the deaf community. ECF No. 79-2 (Williams Report) at 5.

As part of his clinical practice, he states that he is one of the two developers of the Communication Skills Assessment (CSA) which is now used across the country to assess the communication characteristics of individuals who are deaf or hard of hearing. *Id.* He describes the CSA as a tool to meet the needs of service providers who needed one assessment capable of evaluating an individual across multiple communication modalities. *Id.* Over the last four years, he has instructed on the use of the CSA at national conferences and other venues, including three states—Alabama, Georgia and Pennsylvania—where the use of the CSA was mandated by a federal settlement agreement. *Id.* Mr. Williams states that there are no other tools available which can provide a comparison across spoken, written, and signed languages. *Id.*

Mr. Williams's report begins with a summary, where he states that, based on interviews with Plaintiff, she "was not afforded effective access to communication while she was incarcerated at the Adams County Detention Center." *Id.* at 3. Also in the summary, Mr. Williams cites the Americans with Disabilities Act (ADA), the Patient Protection and Affordable Care Act (ACA), and Section 504 of the Rehabilitation Act

8

and then states that these laws "require that individuals with a disability have an equal opportunity to benefit from the services provided" and that these "laws and regulations also require that health care providers ensure effective communication to people with disabilities and provide auxiliary aids/services necessary to do so." *Id.*

Mr. Williams goes on to conclude that "the auxiliary aids and services utilized by Adams County Detention Center" did not enable Ms. Mullens "to have effective, dependable, consistent, two-way communication with the medical and correctional staff with whom she was trying to communicate." *Id.* at 9.

### 2. Defendant's Rule 702 Motion

Defendant does not challenge Mr. Williams's qualifications. His motion, instead, attacks the usefulness and reliability of his opinions. Defendant challenges Mr. Williams's opinions primarily on two grounds: (1) Mr. Williams's opinion impermissibly offers an opinion as to compliance with the law; and (2) his methodology is focused on healthcare communications, which is a higher degree of difficulty, than ordinary jail communications. ECF No. 79 at 5. The Courts addresses argument each in turn.

#### a. Legal Opinions

Defendant challenges two specific opinions as impermissible legal opinions. ECF No. 79 at 6–7. The first is found in Mr. Williams's summary section, where he opines that

> [t]he Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq, the Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 1557, and Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794(a) and their implementing regulations require that individuals with a disability have an equal opportunity to benefit from the

9

> services provided. These laws and regulations also require that health care providers ensure effective communication to people with disabilities and provide auxiliary aids/services necessary to do so. The failure to provide effective communication denied Ms. Mullen equal access to the services offered by the Detention Center.

Williams Report at 3. The second is from Mr. Williams's conclusion section in which he opines that

> the information provided does not reflect that the auxiliary aids and services utilized by Adams County Detention Center enabled [Plaintiff] to have effective, dependable, consistent, two-way communication with the medical and correctional staff with whom she was trying to communicate.

*Id.* at 9.

In the first opinion, Mr. Williams purports to instruct the factfinder on the requirements of three federal laws: the ADA, ACA, and Section 504. He then concludes that the Detention Center failed to comply with those laws because it did not provide "effective communication" to Ms. Mullen during her detention.

Mr. Williams's opinions in his summary plainly wade too far into the legal requirements of federal laws. "[I]t is well settled that experts are not permitted to testify as to the applicable law or legal standards." *Stratus Redtail Ranch LLC v. Int'l Bus. Machines Corp.*, No. 19-CV-02611-CMA-NYW, 2022 WL 2132071, at *3 (D. Colo. June 14, 2022) (citing *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1150 (10th Cir. 2009)). Therefore, Mr. Williams's opinions as to the applicable legal standards governing this dispute must be excluded.

Likewise, the challenged opinion also states a legal conclusion by applying those federal laws to the challenged discriminatory conduct. Here, such opinions are

impermissible. *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) ("[A]n expert may not state legal conclusions drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion." (quoting *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008))).[1]

Accordingly, the Court will exclude Mr. Williams's opinions concerning the requirements of the federal laws governing this case and whether Defendant complied with those requirements.[2]

The Court will not, however, exclude the second opinion cited above. Mr. Williams performed several communication tests with Ms. Mullen and determined that the auxiliary aids and services used at the Detention Center did not permit Plaintiff to effectively communicate with the Detention Center staff. Defendant argues that his opinion is "directly premised on Mr. Williams's view of the applicable legal standards." ECF No. 79 at 7. The Court is not persuaded by Defendant's argument that this is an impermissible legal conclusion. This opinion appears in his conclusion section after

---

[1] The outcome may be different if Mr. Williams was qualified to provide such an opinion. *See United States ex rel. Jackson v. DePaul Health Sys.*, 454 F. Supp. 3d 481, 490–91 (E.D. Pa. 2020) (permitting expert attorney, who "holds a J.D., is certified in healthcare compliance, and was a compliance officer" for a hospital, to "testify as an expert on healthcare regulation compliance due to his experience and credentials in healthcare regulation compliance"). But he is not. Mr. Williams repeatedly explained in his deposition that he is not a lawyer and does not hold any legal licenses or certificates, so testimony as to the requirements of certain federal laws are beyond his expertise. ECF No. 90-4 at 74:24–25.

[2] To avoid any doubt, the Court is only excluding the portion of Mr. Williams's summary opinion where he references the federal laws and then applies those laws to the facts of this case. The Court is not excluding the first two sentences of his summary where he describes observations of his interviews with Plaintiff, including his opinion on what constitutes effective communications specifically for Plaintiff. He is qualified to opine on such matters which plainly are relevant in this case and would be helpful to the jury.

Defendant also spends four pages arguing that Mr. Williams's proffered opinion is premised on an inapplicable legal standard. ECF No. 79 at 7–10. Defendant, however, does not identify the specific opinion or opinions he is challenging with this objection. *See* CNS Civ. Practice Standard 7.1C(b) (effective Dec. 1, 2022). To the extent the objection is not moot in light of the Court's ruling, the Court declines to address this specific argument for failure to comply with the practice standards.

outlining his communication test findings. Nowhere in his findings or conclusion sections does he state that this opinion is premised on his views of the applicable legal standards. In fact, he does not even reference any laws or legal standards except in his summary section. The Court will permit Mr. Williams to testify about his test findings and his opinions about the effectiveness of the communications Plaintiff had with the Detention Facility staff.

### b.  Mr. Williams's Methodology

Defendant attacks Mr. Williams's methodology because it is focused on healthcare communications and not "ordinary jail communications." ECF No. 79 at 5, 10–11. Defendant, however, offers no authority to support his position that Mr. Williams's testing is not reliable in a jail setting. During cross examination, Defendant is permitted to draw the distinction, if any, between communications in a healthcare setting and a jail setting, but these distinctions go to the weight, not the admissibility, of Mr. Williams's opinions. *See Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996) (if there is a logical basis for an expert's opinion, the weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony), *overruled on other grounds by Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

Finally, Defendant argues that Mr. Williams did not review any Adams County communications policies, watch the Adams County ASL orientation, tour the Detention Facility, or review any written notes between Plaintiff and the facility deputies. *Id.* Although Mr. Williams's only source of information came directly from Plaintiff, *see*

Williams Report at 3,³ Defendant does not offer any authority to show that such firsthand knowledge is required. Generally, the lack of firsthand knowledge goes to weight not admissibility. *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000) (experts properly admitted despite lacking firsthand knowledge because "firsthand knowledge is not requisite to the admissibility of an expert opinion" (quoting *Daubert*, 509 U.S. at 592)).

* * *

In sum, Mr. Williams may testify about his observations, testing results, and opinions of Plaintiff's communication abilities and requirements, but he is prohibited from testifying about the applicable legal standards governing this case.

### B. Defendant's Motion for Summary Judgment

Defendant raises numerous arguments in his summary judgment motion. ECF No. 84 at 10–25. The Court has already addressed several of the legal arguments and will not revisit those arguments here. For his remaining arguments, Defendant contends that the Detention Facility employees did not discriminate against Plaintiff, and even if they did, the discrimination was not intentional. *Id.* at 10–15.

"Summary judgment is a drastic remedy" and "should be awarded with care." *Conaway v. Smith*, 853 F.2d 789, 792 n.4 (10th Cir. 1988). Here, there is just enough evidence to prevent the Court from granting summary judgment in Defendant's favor. Plaintiff cites her own deposition testimony and that of her expert, Mr. Williams, to show

---

³ Mr. Williams listed five sources of information in his report that he relied on in forming his opinions: (1) interviews with Plaintiff; (2) Rapid Estimate of Adult Literacy in Medicine (REALM) test of Plaintiff; (3) Communication Skills Assessment (CSA) of Plaintiff; (4) Test of Functional Health Literacy of Plaintiff; and (5) Plaintiff's Amended Complaint and Jury Demand. Williams Report at 3.

that she cannot effectively communicate through written or spoken English, which prevented her from effective communications with the deputies at the Detention Center. ECF No. 91 at 12–13. She also cites the testimony of Deputy Kraefft, who generally testified about the communication challenges while booking Plaintiff. ECF No. 91 at 13.

While Plaintiff's evidence is minimal, construing the factual record and reasonable inferences in light most favorable to her, the Court cannot conclude as a matter of law that there are no genuine fact disputes.

Accordingly, Defendant's motion for summary judgment is DENIED.

### C. Plaintiff's Motion for Reconsideration of the Order on Motion to Strike Plaintiff's Demand for a Jury

Plaintiff filed her First Amended Complaint on November 8, 2021. Seven months later, the Supreme Court issued its opinion in *Cummings v. Premier Rehab Keller PLLC*, 596 U.S. 212 (2022), in which it held that emotional distress damages are not recoverable under the Rehabilitation Act. *Id.* at 229–30. The parties understood the *Cummings* holding to mean that compensatory damages were no longer available to Plaintiff in this case. ECF No. 116 at 3. To that end, Defendant moved to strike Plaintiff's jury demand, arguing that a claim raised under the Rehabilitation Act is equitable in nature and, therefore, is not a civil action entitled to a jury trial. ECF No. 50. Plaintiff did not respond to Defendant's motion, and the Court granted that motion. ECF No. 73.

Plaintiff now moves for reconsideration of that order. Plaintiff's counsel explains that Plaintiff did not challenge Defendant's motion because, at the time of filing, counsel believed that *Cummings* eliminated all forms of compensatory damages under the Rehabilitation Act. ECF No. 116 at 3.

14

Federal courts now have consistently held that *Cummings* does not bar plaintiffs from recovering specific categories of compensatory damages. *See Williams v. Colorado Dep't of Corr.*, No. 21-CV-02595-NYW-NRN, 2023 WL 3585210, at *7 (D. Colo. May 22, 2023) (striking compensatory emotional distress damages under Section 504 but sustaining the requests for economic loss or physical pain and suffering); *A.T. v. Oley Valley Sch. Dist.*, No. CV 17-4983, 2023 WL 1453143, at *4 (E.D. Pa. Feb. 1, 2023) (collecting cases that allowed for other forms of compensatory damages post-*Cummings*, finding that "[a]lthough *Cummings* bars claims for compensatory emotional damages under Section 504 [], Title IX and the ADA, there is nothing in the decision that bars a plaintiff from seeking other forms of compensatory damages under these three statutes"); *Montgomery v. D.C.*, No. CV 18-1928 (JDB), 2022 WL 1618741, at *25 (D.D.C. May 23, 2022) ("[T]he Court concludes that while Montgomery cannot recover either emotional distress or reputation damages in light of *Cummings*, he may be able to recover some small amount of damages to compensate him for the opportunity he lost when he was denied the ability to meaningfully access and participate in his interrogations."). The Court follows this line of cases and finds that a plaintiff may recover for losses for physical pain and suffering and lost opportunities damages under Section 504.

Having found that these damages are available under Section 504, the next issue is whether a plaintiff is entitled to a jury trial. Section 504 does not specifically grant the right to a jury trial, so the Court looks to the Seventh Amendment. *See Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 563 (1990). The

15

Seventh Amendment states that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. To determine whether an action is a "suit at common law," the Court looks at the type of remedy available to a plaintiff. Generally, physical pain and suffering and lost opportunities damages are legal, not equitable, in nature. *See Chauffeurs, Teamsters & Helpers*, 494 U.S. at 571. It follows that a plaintiff seeking physical pain and suffering and lost opportunity damages would be entitled to a jury by trial under the Seventh Amendment.

Defendant argues that Plaintiff attempts to pursue new categories of damages through her motion for reconsideration. ECF No. 120 at 12. Defendant's argument is not without merit. Although Plaintiff has consistently sought compensatory damages, including past and future pecuniary and non-pecuniary losses, emotional distress, suffering, loss inconvenience, mental anguish, and loss of enjoyment of life, *see* ECF No. 68 (Amended Scheduling Order), Plaintiff admits that she did not incur any "economic damages" or "medical injuries or expenses" resulting from her overnight incarceration. ECF No. 91, ¶¶ 64–65. The Court holds Plaintiff to those admissions.

The only remaining categories of compensatory damages available to Plaintiff that may entitle her to a jury trial are loss of opportunity and physical pain and suffering damages. Here, Plaintiff has consistently alleged lost opportunity damages by Defendant's failure to provide her with an ASL interpreter. *See* Am. Compl. at ¶¶ 1–3, 89–91, 104, 133–38, 161, 186, 196. She has also testified about her perceived lost opportunity damages. *See* ECF No. 91-2 (Mullen Deposition) at 57:20–58:11. Plaintiff

thus may be able to recover damages to compensate her for the alleged lost opportunity to participate in the booking system. *See Montgomery*, 2022 WL 1618741, at *25 (finding that the plaintiff "may be able to recover some small amount of damages to compensate him for the opportunity he lost when he was denied the ability to meaningfully access and participate in his interrogations"). She similarly has alleged and testified that she suffered physical pain and suffering from, among other things, sitting in a painful position for a prolonged period of time and being denied her prescribed pain medications. *See, e.g.,* Am. Compl. at ¶¶ 160, 163, 188, 198, 208; Mullen Deposition at 31:6–24, 38:23–39:1, 66:4–5, 71:20–25.

Having found that compensatory damages are available to Plaintiff, the Court finds that Plaintiff is entitled to a jury trial. Accordingly, Plaintiff's motion for reconsideration is GRANTED.

## V.   CONCLUSION

Consistent with the above analysis, the Court makes the following rulings:

- Defendant's Motion to Preclude Expert Testimony of Roger C. Williams Pursuant to Fed. R. Evid. 702, ECF No. 79, is GRANTED in part and DENIED in part;

- Defendant's Motion for Summary Judgment, ECF No. 84, is DENIED; and

- Plaintiff's Motion for Reconsideration of the Order on Motion to Strike Plaintiff's Demand for a Jury, ECF No. 116, is GRANTED.

DATED this 7th day of March 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge